**In the Matter of SKYLINE LUMBER COMPANY, Inc.**
**No. 67-BK-786-R.**

United States District Court,
W. D. Virginia,
Roanoke Division.
April 9, 1970.

line Lumber Company, Inc., the Bankrupt, was engaged in the business of finishing and supplying lumber at Roanoke, Virginia, until it was adjudicated a bankrupt on July 1, 1968.

As is evident from the docket sheets in the record, dozens of issues have been determined and orders entered in this proceeding which have no direct bearing on the question for review. By way of background, however, the pertinent facts are set forth as follows:

In 1963, the Bankrupt was owned by E. R. Woolridge and one P. D. Gravett. For some fifteen years prior to 1963, E. R. Woolridge allegedly returned a portion of his salary to the Bankrupt and took in return promissory notes from the Bankrupt as evidence of the alleged debt. In 1963, Woolridge's note amounted to approximately $35,000. This note is variously referred to as $35,000, $33,000, or $33,300, the face value having been somewhat reduced by payments.

In October of 1963, the Bankrupt apparently encountered financial difficulties. The then stockholders of the Bankrupt formed a new corporation named Skyline Holding Corporation, sometimes referred to as Skyline Holding Corporation, Incorporated, which hereinafter will be referred to as Skyline Holding. Skyline Holding Corporation is not, as its name imports, a holding company at all, inasmuch as it holds none of the stock of the Bankrupt. There is no parent-subsidiary relationship between the two corporations. Skyline Lumber Company, Inc., is in Bankruptcy, but Skyline Holding Corporation is not. It and the Bankrupt had interlocking directorates and were both owned by the same financial interests. Shortly after the formation of Skyline Holding, E. R. Woolridge, while president of both the Bankrupt and Skyline Holding, caused the real estate held by the Bankrupt to be transferred to Skyline Holding. The real estate in question was encumbered by a first deed of trust to secure to First National Exchange Bank, Roanoke, Virginia, the repayment of $150,000 evidenced by a promissory note. At the time of

Evans B. Jessee, Roanoke, Va., for petitioner.

Leon R. Kytchen, Roanoke, Va., for trustee.

## OPINION

WIDENER, District Judge.

This is a proceeding on two petitions to review orders of the referee in bankruptcy as provided under § 39(c) of the Bankruptcy Act, 11 U.S.C. § 67(c). Sky-

transfer of the real estate to Skyline Holding, the balance of the note was approximately $105,000, and Skyline Holding assumed payment of the note held by First National Exchange Bank, as well as the $35,000 salary note made by Bankrupt and held by Woolridge.

Thereafter, in the spring of 1965, E. R. Woolridge, then owner of approximately one-half of the outstanding stock of both the Bankrupt and Skyline Holding and president of both, suffered a heart attack and was forced to retire. As part of Woolridge's retirement, Skyline Holding secured the $35,000 note by a second deed of trust dated October 29, 1965, on the aforesaid real estate. The present controversy arises out of the granting of the latter deed of trust.

Subsequent to giving the second deed of trust to Woolridge, Skyline Holding obtained refinancing in the amount of $150,000 from Mountain Trust Bank of Roanoke, Virginia, and secured that loan by a first deed of trust dated March 22, 1966, on the aforesaid real estate. The deed of trust to First National Exchange Bank obviously was released as a part of the refinancing, and the Woolridge deed of trust was subordinated to the Mountain Trust Bank deed of trust.

During the fall of 1967, the fortunes of the Bankrupt having declined noticeably, the Bankrupt filed a Chapter XI proceeding in the Bankruptcy Court. After determined effort failed to rehabilitate the company, the Chapter XI proceeding was converted into straight bankruptcy. Franklin P. Pulley, III (hereinafter referred to as Trustee) was appointed Trustee for the Bankrupt.

Pursuant to an order of the Bankruptcy Court, entered July 26, 1968, authorizing the Trustee to take whatever action he, or his counsel, deemed necessary to effect the recovery of the aforesaid real estate previously conveyed by the Bankrupt to Skyline Holding, the Trustee instituted suit in the Law and Chancery Court for the City of Roanoke, Virginia, against P. D. Gravett, the then president of Skyline Holding, and others to set aside the conveyance from the Bankrupt to Skyline Holding. As a result of the institution of that suit, an agreement was reached between the stockholders, officers and directors of Skyline Holding that, in consideration of the Trustee withdrawing its action against the individuals personally and as officers of Skyline Holding, P. D. Gravett would transfer ⅝ of all outstanding stock of Skyline Holding, which Gravett then owned, to the Trustee of the Bankrupt, who with one E. E. Adams, the minority stockholder of Skyline Holding, agreed to a transfer of the real estate to the Trustee. The agreement was duly entered into by the Trustee in late September or early October, 1968, and carried out with approval of the Bankruptcy Court as shown in the record.

Sometime in October, 1968, before the Trustee received title to the real estate, Skyline Holding, without any order of the Bankruptcy Court, instituted suit in the Law and Chancery Court for the City of Roanoke, Virginia, to set aside the deed of trust given by Skyline Holding to secure Woolridge payment of the debt allegedly due him. Woolridge demurred to the Bill on the grounds that the corporation had no standing to maintain a suit to set aside its own conveyance. The demurrer was sustained and the Bill dismissed, the necessary holding of the Chancellor being that a corporation has no standing to represent its own creditors or stockholders.

Thereafter, the deed of reconveyance dated November 12, 1968, and executed May 8, 1969, from Skyline Holding to Trustee of the Bankrupt was delivered to the Trustee. The Trustee then assumed ownership of the real estate and undertook to determine the validity and amount of all liens against the same, including Woolridge's second deed of trust from Skyline Holding. The Trustee, after the suit in the state court had been dismissed, filed a petition in the Bankruptcy Court not only to set aside the Woolridge deed of trust as being void, but also to determine the amount, if any, that might be due thereunder.

Petitioner seeks review of two orders entered by the Bankruptcy Court. In his second petition for review, the petitioner contends that the order entered by the Bankruptcy Court on November 4, 1969, adjudicating the original transfer of the real estate from the Bankrupt to Skyline Holding as fraudulent and approving the actions taken by the Trustee in securing the reconveyance of the real estate to the Bankrupt was erroneous for the reason that Woolridge was not made a party to such proceedings and received no notice thereof.

This court finds that petitioner's contention is without merit inasmuch as his position, as lien creditor of Skyline Holding, gives him no standing to complain of the reconveyance. Petitioner claims his debt is secured by a second deed of trust from Skyline Holding. When the real estate securing his debt was reconveyed to the Trustee of the Bankrupt, the security for the debt followed the real estate and was in no way diminished thereby.

Petitioner's real concern is that the Bankruptcy Court, now having title to, and possession of, the real estate, may proceed to adjudicate the validity of his secured claim on its merits.

The claim register also lists Woolridge as having filed an additional claim of $6,000, presumably unsecured, so his position in opposing the increase in assets of the bankrupt estate becomes completely incomprehensible unless it is to finally avoid a decision on the merits of the validity of the $33,000 deed of trust.

However this may be, the questions presented are of no consequence, since petitioner will be given a chance in this proceeding to present and defend his claim on its merits in the Bankruptcy Court.

Petitioner's first petition for review involves the Trustee's petition in the Bankruptcy Court to set aside the Woolridge deed of trust. Petitioner contends that the order of the Bankruptcy Court entered July 30, 1969, overruling his pleas to the jurisdiction of that court to determine the validity of his deed of trust from Skyline Holding was erroneous. The substance of petitioner's pleas may be stated briefly as follows: (1) that the former adjudication in the state court is *res judicata* as to those matters set forth in the petition; (2) that the Bankruptcy Court has no jurisdiction of the subject matter of the controversy for the reason that Skyline Holding is the holder of the record title to the real estate and is not in bankruptcy; and (3) that the parties necessary for a determination of the matters set forth in the petition are not before the Bankruptcy Court upon any proper process or consent to jurisdiction. The court will consider the pleas in the order that they have been stated.

The question presented by the first plea is whether the judgment entered on the demurrer in the state court dismissing the suit by Skyline Holding to set aside the Woolridge deed of trust is *res judicata* as to those issues subsequently raised by the Trustee in the Bankruptcy Court.

The doctrine of *res judicata* is not based upon any statute or rule of common law. It is rather a judicial reflection of public policy favoring one fair trial *on the merits* by a court of competent jurisdiction as an expedient in the administration of public justice. Burks, Pleading and Practice § 357 (4th ed. 1952). A final judgment *on the merits* of a controversy by a court of competent jurisdiction is a complete bar to further adjudication between the same parties and those in privity with them, not only on those matters that were actually in controversy, but also as to all matters which could have then been determined as a part of that claim or demand. Brunner v. Cook, 134 Va. 266, 114 S.E. 650 (1922). The demurrer in the chancery suit under discussion was only on the grounds, variously stated, that Skyline Holding was an improper party to maintain the suit. The Trustee urges that the demurrer is not *res judicata* because it did not reach the merits of the case. However, special demurrers have been

abolished in Virginia, and a decision of an issue of law on a demurrer is a decision on the merits and constitutes *res judicata* as to any other proceedings *where the same parties and the same issues are involved.* Griffin v. Griffin, 183 Va. 443, 32 S.E.2d 700 (1945). The petitioner contends that the Trustee procured the suit by Skyline Holding in the state court, and by so doing he was in privity with Skyline Holding, and the doctrine of *res judicata* should be a bar to his again raising the same issues. It appears that the Trustee, although not named as a party in the chancery cause, was at the time of the institution of the suit a majority shareholder in Skyline Holding. Certainly, he had knowledge of its filing; the mailing address of Skyline Holding on the face of the Bill was in care of the Trustee. It is undisputed that the Trustee had an interest as a stockholder in Skyline Holding. The critical question, however, is not whether the Trustee was a shareholder in Skyline Holding or knew of the litigation, but whether the Trustee occupied some relation toward Skyline Holding that would, in the eyes of the law, place him in privity with Skyline Holding. The nature of a relationship that would make the Trustee in privity with Skyline Holding is one in which the Trustee would be liable to Skyline Holding, either by operation of law or by contract, to indemnify Skyline Holding with respect to the subject matter of the litigation in the state court. Otherwise, the Trustee is not bound by the judgment under the doctrine of *res judicata.* O'Hara v. Pittston Co., 186 Va. 325, 42 S.E.2d 269 (1947). No theory has been suggested, nor has any been advanced by Woolridge, under which the Trustee as stockholder might have been liable to indemnify Skyline Holding in the suit in the Law and Chancery Court of Roanoke to set aside the Woolridge deed of trust. The fact that the Trustee might have been a proper party to the chancery suit does not bind him to its result. "The rule is general that persons who might have made themselves parties to a litigation between strangers, but did not, are not bound by the judgment." Gratiot County State Bank v. Johnson, 249 U.S. 246, 249–250, 39 S.Ct. 263, 264, 63 L.Ed. 587. It is therefore the opinion of the court that the Trustee is not barred under the doctrine of *res judicata* from maintaining an action in the Bankruptcy Court to determine the validity of the Woolridge deed of trust. The state court, at the urging of Woolridge, sustained the demurrer on the drily technical grounds that Skyline Holding was not a proper party complainant. A creditor would not have been barred from a later suit in the state court to set aside the conveyance, and the Trustee as representative of all the creditors certainly should not be so barred here.

■ ■ Petitioner's second plea raises the question of whether the Bankruptcy Court has jurisdiction of the subject matter of the controversy. Petitioner contends that inasmuch as Skyline Holding is the record holder of the real estate, and is not in bankruptcy, the Bankruptcy Court cannot determine the validity of Woolridge's deed of trust. This argument is wholly without merit. The real estate has been conveyed to the Trustee in Bankruptcy and delivery of the deed has been made to him. The Trustee is an officer of the Bankruptcy Court and the real estate recovered by him for the benefit of the Bankrupt is within the jurisdiction of that court. It is unnecessary for the Trustee to record his deed in the deed books to perfect his title or to administer the property as an asset of the bankrupt estate. Whether or not Skyline Holding is in bankruptcy is of no moment, for the Trustee has the property.

■ Petitioner's third plea raises the question of whether the proper parties are before the court for a determination of the validity of Woolridge's deed of trust. Because E. R. Woolridge is the holder of the note secured by the deed of trust, he is a necessary party to any proceeding in the Bankruptcy Court to settle the allowance of that claim. Thus, unless Woolridge is before the Bankrupt-

cy Court, it has no jurisdiction to set aside his deed of trust.

 The Bankrupcty Court is not empowered to issue compulsory process to make additional parties to a proceeding. However, the law is well established that a creditor who voluntarily files a claim in bankruptcy thereby submits himself to the summary jurisdiction of the court to determine the validity of his claim. Such jurisdiction extends at least to set-offs, counterclaims, and other matters arising out of the same transaction as the claim itself. Florance v. Kresge, 93 F.2d 784 (4th Cir. 1938); Continental Casualty Co. v. White, 269 F.2d 213 (4th Cir. 1959). The claims register shows that Woolridge voluntarily came into the Bankruptcy Court on December 31, 1968, and filed his claim for $33,000. Not only did he file the $33,000 claim, but on the same date the claims register shows that he filed a supplemental claim for $6,000. The filing of such proofs of claim subject Woolridge to the jurisdiction of the Bankruptcy Court for a determination of the validity and amount of the claims, including the validity of the deed of trust on the real estate now held by the Trustee.

The petitioner, in his first petition for review, also claims that the order of July 30, 1969, about which he complains, was entered without notice and that no petition was filed upon which to have a hearing.

Petitioner, amazingly enough, on June 25, 1969, filed three pleas to a "petition", in each of which he describes the petition now alleged not to exist. The docket entries show a petition filed June 5, 1969, concerning "security of indebtedness due E. R. Woolridge," and the next docket entry shows notice was given on June 6, 1969, for hearing "above petition" on June 26, 1969. Although the petition of June 5, 1969 has not been forwarded to this court, the court is satisfied that it did or does exist, and considers this grounds for review to be frivolous.

The Trustee urges the court to hold that Woolridge's deed of trust is invalid under the doctrine of Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Although the facts of that case are similar in many respects, and it may well be controlling, the court does not now make a determination on the merits of the validity of the deed of trust. The holding here is only that petitioner's pleas are not well taken, and that the Bankruptcy Court has jurisdiction of the persons and property to determine the validity of the second deed of trust securing Woolridge.

The facts as stated in briefs of the parties go far afield from the facts as disclosed by the record here. This has supplied useful background. The facts at hand, however, would never permit a determination in this court at this time as to the merits of the controversy.

An order is this day entered remanding this case to the Referee in Bankruptcy for further proceedings in accordance with this opinion, and enjoining petitioner from selling or otherwise disposing of his debt and security pending the outcome of this case in the Bankruptcy Court.