FELDMAN, District Judge:
Before this Court is an appeal and cross-appeal of the district court’s affirmance of a ruling by the bankruptcy court setting reasonable attorneys’ fees in connection with a mortgagee’s secured claim pursuant to 11 U.S.C. § 506(b). We affirm.
BACKGROUND
Blackbum-Bliss Realty, Inc., a secured creditor, held a promissory note issued to it by Hudson Shipbuilders, Inc., for $1,600,-000; the note was secured by a mortgage. The mortgage was a first lien on Hudson’s property.
Allied Bank of Texas was the holder of a second mortgage on the Hudson property in the amount of $2,800,000.
Hudson defaulted and Blackburn-Bliss turned its note over to attorneys for collection. The note contained the following provision:
If default is made in the payment of any one of the said monthly installments, the maturities of the remaining monthly installments will, by acceleration, become immediately due and payable. In the even of such default, if the note is placed in the hand of any attorney for collection, an additional amount of fifteen (15) percent shall be added to the remaining unpaid principal as attorneys’ fees.
On February 9, 1983, Hudson filed for relief under Chapter 11. Blackburn-Bliss responded by filing a proof of claim in the bankruptcy court proceeding for the full amount of its claim, including interest and attorneys’ fees.[1] On April 11, 1983, Black-bum-Bliss filed a Complaint to Modify Automatic Stay requesting the bankruptcy court to lift the automatic stay so that it could foreclose upon Hudson’s property and collect the amount claimed. On April 4, 1984, the bankruptcy court entered an agreed upon order which provided that the Chapter 11 stay would terminate on May 1, 1984, and that foreclosure could commence on that date.[2] In addition, the order provided that Hudson would retain the right to buy back the collateral from Blackbum-Bliss or its assigns for cash, in an amount equal to all outstanding principal, interest, costs, and attorneys’ fees, within sixty days after foreclosure.
Allied Bank was concerned about its junior security position on the Hudson property, and entered into negotiations with Blackburn-Bliss in an effort to acquire the first mortgage. Although the parties were in basic agreement about the balance due, a dispute arose as to the appropriate amount of attorneys’ fees to be added to the sale price. Blackbum-Bliss insisted that it was entitled to a full fifteen percent of the remaining unpaid balance as set forth in the note, but Allied Bank believed that only fees for services actually provided could legitimately be added to the sale price.
They could not resolve their differences, and Allied Bank filed a motion on April 11, 1984 requesting the bankruptcy court to determine the amount of attorneys’ fees to which Blackbum-Bliss was properly entitled in connection with its note. Both the Unsecured Creditors’ Committee and the debtor joined in the motion.
*1054 After a hearing, the bankruptcy court ruled on April 30, 1984 that federal law controlled the proper amount of attorneys’ fees to be permitted in connection with a secured claim under 11 U.S.C. § 506(b). Upon the evidence presented, the court decided $30,000 was a reasonable fee. Further, the court authorized Allied Bank to purchase the debtor’s obligation to Blackburn-Bliss.
On May 4, 1984, three days after the stay had lifted, Allied Bank and Blackburn-Bliss entered into a sale agreement. Blackburn-Bliss agreed to sell its mortgage to Allied Bank, including attorneys’ fees of $30,000 as fixed by the bankruptcy court, but preserved the issue of attorneys’ fees for appeal to the district court. Allied Bank also appealed, contending that a smaller fee should have been fixed by the bankruptcy court, or no fee at all, because counsel for Blackburn-Bliss represented conflicting interests before the bankruptcy court.
The district court affirmed the bankruptcy court and this appeal followed.[3]
THE QUESTIONS ON APPEAL
Four questions are presented on appeal: (1) Whether the bankruptcy court had jurisdiction to fix the amount of attorneys’ fees which could be demanded as part of Blackburn-Bliss’ secured claim; (2) Whether the court erred in applying federal law instead of state law to determine what was a reasonable fee; (3) Whether the evidence sustained the bankruptcy court’s finding that $30,000 was reasonable under the circumstances; and (4) Whether the bankruptcy court erred in allowing attorneys’ fees notwithstanding an apparent conflict of interest on the part of counsel for Blackburn-Bliss.
I.
THE BANKRUPTCY COURT'S JURISDICTION
11 U.S.C. § 506(b) entitles the holder of a secured claim to reasonable attorneys’ fees to the extent that the claim is secured by property, the value of which exceeds the principal amount of such claim, as long as the underlying agreement upon which the claim is based provides for such fees.
Blackburn-Bliss contends that the bankruptcy court exceeded its jurisdiction when it entertained Allied Bank’s motion, joined in by the debtor and the Unsecured Creditors’ Committee, and fixed the $30,000 fee pursuant to 11 U.S.C. § 506(b). Blackburn-Bliss asserts that in doing so, the bankruptcy court unjustifiably interposed itself in a wholly private negotiation between two creditors which had no place before the bankruptcy court and in which the bankruptcy court had no interest. Therefore, they urge, the district court erred. We disagree.
By filing a proof of claim in the bankruptcy proceeding, Blackburn-Bliss impliedly consented to the jurisdiction of the bankruptcy court, at least as to a determination of the validity and amount of the claim asserted. See, In re Skyline Lumber Company, 311 F.Supp. 112, 117 (W.D.Va.1970). Since Blackburn-Bliss was asserting a claim for the attorneys’ fees stipulated in its note, it necessarily called for a determination by the bankruptcy court as to the appropriate amount of attorneys’ fees to be allowed pursuant to 11 U.S.C. § 506(b). See, In re Dooley, 41 B.R. 31 (Bankr.N.D.Ga.1984). See also, In re Bryant, 626 F.2d 492 (5th Cir.1980).
More importantly, however, it is clear that the bankruptcy court had jurisdiction over this action because it constitutes a core proceeding arising under Title ll.[4] 28 U.S.C. § 157(b)(1) provides that *1055 bankruptcy judges may hear and determine, by order or reference from the district court, all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11, and may enter all appropriate orders and judgments subject to review in the district court. 28 U.S.C. § 157(b)(2) defines core proceedings to expressly include: “(A) matters concerning the administration of the estate”; “(B) allowance or disallowance of claims against the estate”; and (K) determinations of the validity, extent or priority of liens”.
There is no doubt that the property tied to the note held by Blackburn-Bliss constituted a part of the debtor’s estate. See, 11 U.S.C. § 541. Nor can there be any doubt that any fees awarded to Blackburn-Bliss would inevitably be to the detriment of the estate by increasing the debt and would, therefore, affect the administration of the estate. Equally clear is the standing of the debtor and any interested creditor to object to the claim of a secured creditor filed in the bankruptcy proceeding. See, In re Dooley, supra, at 33; In re Williamson, 43 B.R. 813, 820 (Bankr.D.Utah 1984). Since the motion filed by Allied Bank, and joined in by the debtor and Unsecured Creditors’ Committee, concerned a claim which would necessarily impact upon the administration of the estate and in which the debtor and other creditors shared a paramount interest, this action clearly constitutes a core proceeding which was properly before the bankruptcy court. The fact that the dispute concerns the allowance or disallowance of a claim for attorneys’ fees against the estate and the extent and validity of Blackburn-Bliss’ lien for fees further supports the exercise of jurisdiction by the bankruptcy court over this core proceeding. See, 28 U.S.C. § 157(b)(2)(A), (B) and (K). See, e.g., In re Shell Materials, Inc., 50 B.R. 44, 46 (Bankr.M.D.Fla.1985); In re Rosner, 48 B.R. 538, 541 (Bankr.E.D.N.Y.1985).
We reject appellant’s casual characterization of the issue as merely involving a private negotiation in which the bankruptcy court had no interest. Once Hudson filed its petition for relief under Chapter 11, the entire estate of the debtor became subject to the jurisdiction of the bankruptcy court and the provisions of the Bankruptcy Code. The estate operates under the bankruptcy court’s supervision, and other entities, including the various creditors’ committees, maintain an interest in the debtor’s affairs. Any amount of attorneys’ fees which is awarded to Blackburn-Bliss will correspondingly enlarge the debt of the estate, make reorganization more difficult for the debtor, and adversely impact upon the claims of the remaining creditors. While it is generally recognized that “[a] court of bankruptcy has no power to entertain collateral disputes between third parties that do not involve the bankrupt or its property, ... nor may it exercise jurisdiction over a private controversy which does not relate to matters pertaining to bankruptcy”, In re Paso Del Norte Oil Company, 755 F.2d 421, 424 (5th Cir.1985), Blackburn-Bliss’ claim to attorneys’ fees directly relates to the debtor’s estate because it involves the property of the estate and the size of the pending claims against it.
Accordingly, the fact that Blackburn-Bliss was attempting to sell its claim to Allied Bank, rather than initiate its own foreclosure, cannot exempt it from the application of 11 U.S.C. § 506(b). Whether Blackburn-Bliss itself forecloses on Hudson’s property, or whether Allied Bank, having acquired Blackburn-Bliss’ claim, is interposed and forecloses instead, the functional result is the same: the attorneys’ fees will be borne by the estate. The responsibility of the bankruptcy court to administer the estate in an efficient and equitable manner, and to protect the assets of the estate from depletion, remains unchanged.
It is against this background that the bankruptcy court acted pursuant to the Congressional mandate expressed in 11 U.S.C. § 506(b) to prevent Blackburn-Bliss from getting a windfall by extracting attorneys’ fees in excess of what could legitimately be demanded in a bankruptcy proceeding. It is a well-recognized “attribute of the broad equity powers of bankruptcy *1056 courts to prevent an unjust enrichment of one creditor at the expense of others”. In re Intaco Puerto Rico, Inc., 357 F.Supp. 1122, 1125 (D.C.Puerto Rico 1973). The interest of the bankruptcy court, therefore, cannot be understated. Its jurisdiction was not diminished by the third party transaction.
Blackbum-Bliss complains that its rights were impermissibly restricted because it was ordered on pain of contempt to sell its mortgage to Allied Bank. The record does not support that claim. Rather, it is clear that the bankruptcy court, in the exercise of its equity owers, merely declared the amount of attorneys’ fees which could be properly authorized under 11 U.S.C. § 506(b), and declared that Allied Bank would be authorized to purchase the mortgage. The power of the bankruptcy court to enter declaratory relief fashioned to the needs of the parties and subject to review by the district court is clear. See, In re Spencer, 7 B.R. 458 (Bankr.S.D.Calif.1980); 1 Collier on Bankruptcy 113.01[10] (1985). See also, Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) (“There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.”); In re Multiponics, Inc., 622 F.2d 709, 721 (5th Cir.1980). That Blackbum-Bliss decided to sell its mortgage to Allied Bank three days after the automatic stay had been lifted, rather than foreclose, which it clearly had the power to do at that moment, was its own choice and does not affect the jurisdiction of the bankruptcy court. Accordingly, we sustain the exercise of jurisdiction by the bankruptcy court in this case.
II.
THE SUBSTANTIVE LAW TO BE APPLIED: MISSISSIPPI OR FEDERAL?
We must next determine whether the bankruptcy court erred in applying federal law to arrive at a determination of reasonable attorneys’ fees under 11 U.S.C. § 506(b).[5] Blackburn-Bliss contends that state law governs the enforcement of attorneys’ fee provisions in connection with secured claims in bankruptcy.
While this Court has not yet squarely faced the issue, we do agree with the recent decisions of the Fourth and Ninth Circuits in Unsecured Creditors’ Committee v. Walter R. Heller & Company Southeast, Inc., 768 F.2d 580 (4th Cir.1985), and In re 268 Limited, 789 F.2d 674 (9th Cir.1986), and we hold that federal law applies. Heller provides an exhaustive analysis of the legislative history of 11 U.S.C. § 506(b), and concludes that Congress intended that federal law should govern the enforcement of attorneys’ fees provisions, notwithstanding contrary state law.
The Fourth Circuit notes that originally the House and Senate versions of § 506(b) differed. The House version contained an explicit requirement that state law should determine the enforceability of attorneys’ fee agreements, and the Senate version was silent. The differences between the House and Senate versions were resolved through a compromise bill. Both floor managers, Representative Edwards and Senator DeConcini, explained to their respective Houses of Congress immediately prior to passage of the Act that the House version had been rejected and the Senate version retained and that, as a result, attorneys’ fee provisions would be enforceable “notwithstanding contrary law”. 124 Cong.Rec. 32,398, 33,997 (1978). Heller, supra, at 584. The explicit rejection of the House language by both Houses of Congress is a clear indication to the Court that, under the final version of the Bankruptcy Reform Act, Congress intended that feder *1057 al law should govern the enforceability of attorneys’ fee provisions in bankruptcy.
In In re 268 Limited, supra, a secured creditor sought to enforce a contractual attorneys’ fee provision of a first deed of trust against the debtor. Although funds were available to pay the contractually set fee of 5% of the remaining balance on the note ($197,000) the bankruptcy court, relying upon § 506(b), limited the fees to the amount it deemed reasonable under the circumstances and allowed the creditor only $20,000. The Ninth Circuit affirmed the award of the bankruptcy court and held that § 506(b) preempts state law governing the availability of attorneys’ fees as part of a secured claim, and that the bankruptcy court correctly engaged in an independent reasonableness inquiry. The Court expressly rejected the creditor’s argument that the bankruptcy court should have enforced the contractual fee provision if it was valid under the governing state law.
Those decisions are in accord with the vast majority of lower courts, which have similarly concluded that federal law should be the measure of “reasonableness” called for by 11 U.S.C. § 506(b).
In In re Scarboro, 13 B.R. 439 (M.D.Ga.1981), a secured creditor sought attorneys’ fees pursuant to a contract stipulating that “reasonable attorneys’ fees” were to be provided. The bankruptcy court applied Georgia law in determining what amount was a reasonable fee. The district court, while affirming the bankruptcy court’s application of § 506(b), rejected the notion that state law should be applied to determine reasonable fees under § 506(b). The court vacated and remanded on the issue of the amount of fees to be awarded, and instructed the bankruptcy judge to follow the guidelines established by the Fifth Circuit in In re First Colonial Corporation of America, 544 F.2d 1291, 1298 (5th Cir.1977), cert. den., 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977), in arriving at a determination of reasonable fees.
Similarly, in In re Elmwood Farm, Inc., 19 B.R. 338 (Bankr.S.D.N.Y.1982), federal standards of reasonableness were applied, even though the underlying note provided for attorneys’ fees of twenty percent of the unpaid balance on the note. Local law was not used:
“Under the Bankruptcy Reform Act of 1978 ... the bankruptcy court need not look to local law in the context of entitlement to attorneys’ fees. Instead, the holder of a secured claim may collect reasonable attorneys’ fees under Code § 506(b) if the security agreement in question expressly provides for such fees.” p. 341
The court awarded less than half of the amount stipulated in the note as reasonable attorneys’ fees. See also, In re David N. Rausch, Inc., 41 B.R. 833, 834 (Bankr.D.S.D.1984) (“It is axiomatic that federal law, not state laws, determines whether attorneys’ fees are allowable under 11 U.S.C. § 506(b).”); In re Kennedy Mortgage Company, 23 B.R. 466, 474 (Bankr.D.N.J.1982) (“Although the debtor’s contract with the Bank requires the payment of attorneys’ fees, Section 506(b) of the Code imposes a requirement of reasonableness on those fees, consistent with the purposes of the Bankruptcy Code.”); In re Central Foundry Company, 45 B.R. 395 (Bankr.N.D.Ala.1984) (federal standards of reasonableness deemed determinative of the amount to be awarded as attorneys’ fees in connection with secured claim); In re Carey, 8 B.R. 1000 (Bankr.S.D.Calif.1981).
Blackbum-Bliss’ assertion that if the contractual attorneys’ fee provision is valid under state law it must be enforced by the bankruptcy court, and that in such cases the bankruptcy court is without power to arrive at what it otherwise perceives to be a reasonable fee, is contrary to the weight of judicial precedent and is betrayed by a legislative intent indicating that awards are to be made under § 506(b) regardless of state law.
Blackburn-Bliss compares the right to attorneys’ fees to a mortgagee’s right to rents and profits after default, which is governed by state law under the Supreme Court’s decision in Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, 59 *1058 L.Ed.2d 136 (1979). But the analogy is without merit and was expressly rejected by the Ninth Circuit in In re 268 Limited, supra. The Supreme Court’s holding in Butner was dependent upon its finding that there was no evidence that Congress has intended to preempt state law determinations of a mortgagee’s right to rents and profits. The Court found that Congress had the power to regulate the mortgagee’s rights, but had chosen not to do so, stating:
“The constitutional authority of Congress to establish ‘uniform laws on the subject of bankruptcies throughout the United States’ would clearly encompass a federal statute defining the mortgagee’s interest in the rents and profits earned by property in a bankrupt estate. But Congress has not chosen to exercise its power to fashion any such rule.” p. 54
In the case of attorneys’ fees sought in connection with a secured claim, Congress has clearly chosen to exercise its broad power to establish a uniform rule respecting the existence and extent of a right by enacting § 506(b). Accordingly, the holding in Butner is not applicable. Here, a paramount federal interest dictates that federal law shall govern.[6]
III.
WAS $30,000 REASONABLE?
We have previously held that where “the award of reasonable attorneys’ fee is authorized by statute”, the bankruptcy court is to consider several factors in assessing the reasonableness of the fee. See, In re First Colonial Corporation of America, 544 F.2d 1291, 1299 (5th Cir.1977); cert. den., 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). These factors call upon the court to weigh the time and labor devoted to the matter, its difficulty, whether the fee is fixed or contingent, the amount involved, the results obtained, and other awards in similar cases. See, Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974). In addition, the bankruptcy court is to bear in mind that the debtor’s estate must be administered as efficiently and economically as possible, and that sometimes bankruptcy attorneys perform dual functions which might lead to an award of duplicative fees if overlooked. In re First Colonial Corporation of America, supra.
In applying these factors, the bankruptcy judge is instructed to follow a three-step process. First, he must determine the nature and the extent of the services supplied by the attorney with reference to the time and labor records submitted. Second, he must ascertain the value of the services. Finally, he must briefly explain the findings and reasons upon which the award is based. Id. at 1299-1300.
Moreover, we have noted that “[b]ecause the lower court ‘has a far better means of knowing what is just and reasonable than an appellate court can have,’ Trustees v. Greenough, 105 U.S. 527, 537, 15 Otto 527, 537, 26 L.Ed. 1157, 1162 (1881), district courts and bankruptcy judges have broad discretion in determining the amount of attorneys’ fees to award as compensation for services performed in connection with bankruptcy proceedings; and their exercise of that discretion will not be disturbed by an appellate court absent a showing that it was abused.” Id. at 1298. This Court has shown an especial “reluctance to interfere” where the bankruptcy judge and district judge are in agreement. Id.
The record indicates no error in the bankruptcy court’s application of the law. The bankruptcy judge applied the correct legal standard and procedures in making the fee determination. Nor was the fee award based on findings of fact which are clearly erroneous. At the fee hearing, Blackburn-Bliss offered no record of time and expense in support of its demand, which according to its own estimate, was in excess of $190,000. Expert testimony, based upon a review of the services actually rendered by counsel for Blackburn-Bliss, suggested that a reasonable fee could *1059 range from $1,500 to $20,000. In consideration of the amount of money involved, the bankruptcy court decided $30,000 was a reasonable fee. We can find no error in the fee determination.[7]
IV.
COUNSEL’S CONFLICT OF INTEREST
Finally, we find no error in the bankruptcy court’s decision to allow attorneys’ fees notwithstanding an apparent conflict of interest on the part of counsel for Blackbum-Bliss.
The court properly recognized that although it was empowered to deny attorneys’ fees in such situations, it was not compelled to do so. Rather, its exercise of such power is discretionary. See, Woods v. City National Bank & Trust Co., 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941). The bankruptcy court’s decision to allow such fees notwithstanding an apparent conflict of interest is not an abuse of discretion, especially when one remembers the broad equity powers vested in the bankruptcy court. See, e.g. In re New York, New Haven and Hartford Railroad Company, 567 F.2d 166 (2nd Cir.1977), cert. den. 434 U.S. 833, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977); and In re Watson Seafood & Poultry Co., Inc., 40 B.R. 436 (Bankr.E.D.N.C.1984).
Accordingly, for all of the foregoing reasons, the judgment of the district court, is AFFIRMED.

. Although Blackburn-Bliss’ proof of claim has not been filed into the record on appeal, Black-bum-Bliss concedes in its papers that a proof of claim was filed.

. The order was approved as to form and substance by Blackburn-Bliss, the debtor, and the Official Creditors' Committee.

. Allied Bank has since foreclosed on Hudson’s property, resulting in a deficiency claim of $500,000 and will participate pro rata with the remaining unsecured creditors in the proceeds resulting from the liquidation of debtor’s remaining assets.

. This case was pending on July 10, 1984, the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984, and the 1984 Act applies. See, Carlton v. Baww, Inc., 751 F.2d 781 (5th Cir.1985).

. 11 U.S.C. § 506(b), part of the Bankruptcy Reform Act of 1978, provides as follows:
To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided under the agreement under which such claim arose. (Emphasis added)

. Since the Bankruptcy Code gives statutory recognition to the need for a uniform approach to bankruptcy problems, notions of federalism are not abused by applying federal law here.

. Further, this Court agrees with the bankruptcy court’s conclusion, that even if this matter were governed by Mississippi law as contended by Blackburn-Bliss, the result would be the same because Mississippi courts similarly apply a standard of "reasonableness” to attorneys’ fee awards. See, e.g. Travelers Indemnity Co. v. Clark, 254 So.2d 741 (Miss.1971) (Holding that a stipulated attorneys’ fee provision in a note may be challenged upon a showing that the lienholder would unduly profit or that the attorneys’ fee sought was unreasonably high); Jack Cole-Dixie Highway Company v. Red Ball Motor Freight, Inc., 254 So.2d 734 (Miss.1971) (Setting forth factors to be considered in assessing reasonableness of fee stipulation).