**In the Matter of LANSING CLARION LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. GL 91–83658.**

United States Bankruptcy Court, W.D. Michigan.

Oct. 11, 1991.

and circumstances that would permit such an occurrence.

Peter Jackson, Detroit, Mich., for New West Federal Savings & Loan Ass'n.

James Engbers, Grand Rapids, Mich., for Lansing Clarion Ltd. Partnership.

Thomas Schouten, Wyoming, Mich., for Long Development, Inc.

Richard Sundquist, Troy, Mich., for Chrysler Financial Corp.

## OPINION REGARDING NEW WEST FEDERAL SAVINGS & LOAN ASSOCIATION'S MOTION FOR ORDER REQUIRING DEBTOR TO PERFORM POST–PETITION OBLIGATIONS UNDER UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY

JAMES D. GREGG, Bankruptcy Judge.

### I. PROCEDURAL BACKGROUND

On July 5, 1991, Lansing Clarion Limited Partnership, "Lansing Clarion" or "Debtor", filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

On August 5, 1991, New West Federal Savings and Loan Association, "New West", filed its Motion for an Order Requiring the Debtor to Perform Post–Petition Obligations Under an Unexpired Lease of Nonresidential Real Property. In its motion, New West relies upon 11 U.S.C. § 365(d)(3).[1] New West prays that this court award it rent for the period of July 5–August 31, 1991, in the amount of $102,457.09, and require documentary confirmation Lansing Clarion has paid post-petition taxes, utilities, and insurance liabilities as required by a lease.

Lansing Clarion filed its response on August 30, 1991. It asserts the agreement between Long Development, Inc., "LDI", and Lansing Clarion is not a "true lease" but is a financing arrangement. The Debtor therefore argues it is not bound by § 365(d)(3). The court takes judicial notice that LDI has also recently filed for relief under Chapter 11 of the Bankruptcy Code. *See* FED.R.EVID. 201.

This court has jurisdiction over the case pursuant to 28 U.S.C. § 1334. The court finds the contested matter is a core proceeding under 28 U.S.C. § 157(b)(A) and (O). This opinion sets forth the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### II. FACTS

A lease was executed between LDI, as lessor, and Lansing Clarion, as lessee, on June 24, 1984 regarding a convention center adjoining Lansing Clarion's hotel property. (Plaintiff's Exh. 1.) The lease was executed by Gordon L. Long on behalf of both parties. The lease is a so-called "triple net lease". (A triple net lease requires the lessee to be responsible for taxes, insurance and maintenance of the premises.) The lease term is approximately thirty years, commencing on June 24, 1984, and expiring on December 31, 2015.

The promissory note between FCA American Mortgage Co., "FCA", and LDI was executed on June 28, 1984. (Plaintiff's Exh. 2.) The monthly payments on the note and the lease were approximately the same. The note payment is shown as $60,074 per month; the lease payment is $60,103 per month. (Plaintiff's Exhs. 1 & 2.) When the mortgage was modified by LDI and FCA to reduce monthly payments on October 1, 1987, the lease was also amended to reduce Lansing Clarion's monthly rental payments to LDI. (Plaintiff's Exh. 5 & Long testimony.)

The Debtor's main witness in this contested matter, Gordon L. Long, "Long", is the general partner of Lansing Clarion and president of LDI. He therefore signed many documents in his joint capacities for Lansing Clarion and LDI, including the

---

1. Unless otherwise noted, all future statutory references are to Title 11 of the United States Code, sometimes referred to as the "Bankruptcy Code".

lease. Long testified that although the lease provisions provide for LDI, as lessor, to perform certain responsibilities regarding maintenance and repairs, Lansing Clarion performed all those duties and responsibilities. Long also testified that Lansing Clarion paid all taxes, insurance, assessments, and for all improvements made to the convention center premises.

Long testified Lansing Clarion and LDI attempted to exercise the buy-out provisions of the lease pursuant to the option to purchase, without an appraisal. (Defendant's Exh. B.) This attempted exercise of the option to purchase was not effectuated and many of the documents with regard to the attempted exercise of the option were not signed.

The court finds New West is the successor in interest to FCA. (Plaintiff's Exh. 6.) New West holds an assignment of rents and leases from LDI respecting the lease. (Plaintiff's Exh. 3.) New West relies upon the exhibits entered into evidence, the terms and conditions thereof, as well as other relevant facts presented at trial, to support its contention that a "true lease" exists.

### III. ISSUES

The contested matter before the court raises various issues. First, does New West have standing to bring its motion? Second, should Long's testimony be excluded under the parol evidence rule? Third, is the Lease Agreement between Lansing Clarion and LDI a "true or bona fide lease" or a "financing arrangement"? Fourth, must Lansing Clarion, as Debtor–in–Possession, timely perform all obligations under the asserted nonresidential real property lease until it is assumed or rejected? Fifth, must Lansing Clarion now pay post-petition lease payments directly to New West in accordance with an assignment of rents and leases?

### IV. DISCUSSION

A. *Standing*

■ During its opening statement, Lansing Clarion first raised an issue whether New West has standing to bring its motion. Debtor's counsel asserts there is no case authority for the proposition that New West, as assignee of rents and leases from LDI, has standing to bring an action to require a debtor to perform post-petition obligations under the lease.

■ Standing generally exists if a party can demonstrate three elements: (1) an actual or threatened injury resulting from the conduct of the opposing party; (2) the injury can be traced to the challenged action; and (3) the injury is likely to be redressed by a favorable decision by the court. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). *See also Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990); *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Michigan v. Meese*, 853 F.2d 395 (6th Cir.1988), *cert. denied*, 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988); *Michigan Road Builders Ass'n v. Blanchard*, 761 F.Supp. 1303 (W.D.Mich.1991). An actual or threatened injury exists when a party's pecuniary interest may be affected by the outcome of a determination. *United States v. Little Joe Trawlers, Inc.*, 780 F.2d 158, 161 (1st Cir.1986) (citing *Libby, McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 511 (9th Cir.1978)). *Cf. Morgenstern v. Revco D.S., Inc. (In re Revco )*, 898 F.2d 498 (6th Cir. 1990) (ruling that U.S. Trustee has a pecuniary interest sufficient to give standing because it holds a public interest in outcome of case).

New West has a mortgage interest in the convention center real property owned by LDI and an assignment of rents and leases from LDI. (Plaintiff's Exh. 3.) New West's interest is a Fifth Amendment property right which is entitled to constitutional protection. *See, e.g., Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 61 S.Ct.

196, 85 L.Ed. 184 (1940); *Louisville Joint Stock Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). A determination of whether the lease is a true lease or a financing arrangement will affect New West's rights to collect currently unpaid rents and future rents. Specifically, the outcome of the determination will affect New West's pecuniary interest under the mortgage and assignment of rents and leases given to it by LDI. New West may suffer a current injury or a threatened future injury, which is traceable to Lansing Clarion's performance obligations under the asserted lease. Also, a favorable decision by the court will redress any injury or threatened injury which may occur to New West regarding the LDI rent assignment. Therefore, under the somewhat unique facts presented in this contested matter, the court concludes New West has standing to file its motion and to obtain a determination of the issues presented.

### B. *Parol Evidence Objection*

■ During Long's testimony, New West objected to his testimony on the basis of the parol evidence rule. The court reserved making a ruling with regard to New West's objection. The court permitted Long to testify pursuant to FED.R.EVID. 104(a) & (b).[2]

The parol evidence rule has been stated as follows:

> When two parties have made a contract and have expressed it in writing to which they have both assented as to the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*NAG Enterprises v. Allstate,* 407 Mich. 407, 409–10, 285 N.W.2d 770, 771 (1979)

(quoting 3 CORBIN ON CONTRACTS § 573).

In paragraph 21 of the lease in question, there is a so-called integration clause as follows: "This lease contains the entire agreement between the parties and shall not be modified in any manner except by an instrument in writing executed by the parties or their respective successors in interest." In paragraph 24 of the lease, it is stated that the lease "shall in all respects be governed by and construed under the laws of Michigan." (Plaintiff's Exh. 1.)

■ Therefore, it appears the parol evidence rule would be applicable in connection with Long's testimony. However, there exists exceptions to the applicability of the parol evidence rule. For example, extrinsic evidence is admissible to approve the existence of ambiguity or to indicate the actual intent of the parties where ambiguity may exist in the lease; when an ambiguity exists in the lease, extrinsic evidence may be admissible to indicate the actual intent of the parties as an aid in the construction of the lease. *See, e.g., Goodwin v. Orson E. Coe Pontiac, Inc.,* 392 Mich. 195, 209–10, 220 N.W.2d 664, 670–71 (1974).

As argued by Lansing Clarion's counsel, there appears to be some ambiguity within the lease itself. Specifically, paragraphs 2(b) and 5 seem to be in conflict. Therefore, the court has determined to consider Mr. Long's testimony notwithstanding New West's parol evidence objection. However, the court gives Mr. Long's testimony only very limited weight. The court strongly believes the exhibits themselves are entitled to much greater weight than Long's testimony regarding his understanding of the meaning of the exhibits.

Long is a principal of both Lansing Clarion and LDI. Lansing Clarion could have

---

2. FED.R.EVID. 104 states in pertinent part:
   (a) **Questions of Admissibility Generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b)....

   (b) **Relevancy Conditioned on Fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

obtained one large loan with respect to the Lansing Clarion hotel property and the LDI convention center property; Lansing Clarion, through Long, chose not to because it desired to obtain a lower interest rate on the separate hotel bond financing. A conscious decision was made by Long, on behalf of Lansing Clarion, to keep the convention center and hotel transactions separate to benefit Lansing Clarion. Notwithstanding the economic structure of the *two* transactions, Lansing Clarion requests the court to determine the transactions were a single transaction. This request is inconsistent with Lansing Clarion's prior actions to obtain a reduced interest rate on the financing of the purchase of its hotel property. Long's prior actions on behalf of Lansing Clarion and LDI leads this court to doubt his current testimony regarding his understanding of the meaning of the exhibits.

Long admitted in his testimony the lease payments made by Lansing Clarion to LDI were deducted as a lease expense on Lansing Clarion's income tax returns. These tax returns are therefore inconsistent with Lansing Clarion's current position. Lansing Clarion previously certified, by Long, that it did not exceed the ten million dollar legal limit for bond financing. (Plaintiff's Exh. 4.) The lease was not listed as a capital expenditure. This strongly suggests Long and Lansing Clarion each viewed the transaction, at the time of the certification, as a true or bona fide lease. Now that Lansing Clarion has encountered financial problems, it wants the court to determine the lease is a financing arrangement rather than a true lease. Long's testimony again demonstrates Lansing Clarion's inconsistent positions at the time of the certification and the current time.

C. *Financing Arrangement v. True or Bona Fide Lease*

■ Since the plain meaning and legislative history does not define the term "lease of nonresidential real property," courts interpreting whether a transaction is a true or bona fide lease, for purposes of § 365, often begin their analysis with the legislative history of § 502(b)(6). *See Lio-*

*na Corp. v. PCH Associates (In re PCH Associates )*, 804 F.2d 193, 198 (2nd Cir. 1986); *City of San Francisco Market Corp. v. Walsh (In re Moreggia & Sons, Inc.*), 852 F.2d 1179, 1182 (9th Cir.1988); *International Trade Admin. v. Rensselaer Polytechnic Institute*, 936 F.2d 744, 750 (2nd Cir.1991). Section 502(b)(6) of the Bankruptcy Code applies to allowance or disallowance of claims respecting termination of leases of real property. The legislative history acknowledges that what purports to be a lease may, in fact, based upon the circumstances, be a financing arrangement. S.REP. No. 989, 95th Cong., 2d Sess. 63, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5849–50. This court agrees with those courts which apply the § 502(b)(6) requirement of true or bona fide leases to § 365(d)(3) & (4). "[T]hese sections, read together, are part of a total scheme designed to set forth the rights and obligations of landlords and tenants involved in bankruptcy proceedings." *PCH Associates*, 804 F.2d at 199–200; *Moreggia & Sons*, 852 F.2d at 1182; *International Trade Admin.*, 936 F.2d at 748.

The legislative history of Section 502(b)(6) instructs this court that the following factors are important:

■ The *economic substance of the transaction* and not the locus of title, the form of the transaction, or the fact the transaction is denominated a "lease", must be considered. S.REP. No. 989, 95th Cong., 2d Sess. 63, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5849–50. However, this court is cognizant that what is denominated or labeled as a lease is presumed to be a true lease absent compelling factors to the contrary. *See, e.g., In re PCH Associates*, 804 F.2d 193, 200 (2nd Cir.1986). This presumption is rebuttable.

If *rental payments are in substance the payment of principal and interest* on a secured loan or sale, the transaction is a financing arrangement. S.REP. No. 989, 95th Cong., 2d Sess. 63, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5849–50. In this case, rental payments approximately equal the required mortgage payments. However,

an important distinction exists because the entire mortgage obligation is to be satisfied pursuant to a balloon payment in January, 1992 and rental payments shall continue to December, 2015. (Plaintiff's Exh. 2.)

If the lessee has the *option to purchase* the leased premises *for no additional consideration or nominal consideration,* the transaction may be a financing arrangement. S.REP. No. 989, 95th Cong., 2d Sess. 63, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5849–50. The lease states Lansing Clarion may purchase the leased premises for $5.2 million between the third and fifth anniversary until the expiration of the lease.[3] Thereafter, the option purchase price shall be the value of the property as determined by independent appraisers. The lease requires that the option to purchase price shall be in an amount which is more than "nominal".

If the *lessee assumes and discharges substantially all risks and obligations* ordinarily attributed to ownership of the property, the transaction is more indicative of a financing arrangement. S.REP. No. 989, 95th Cong., 2d Sess. 63, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5849–50. In this case, while the lease contains boilerplate language regarding Lansing Clarion's responsibility, as lessee, for certain taxes, maintenance, repair, and insurance, Lansing Clarion does *not* assume substantially all risks related to ownership. For example, paragraph 5 of the lease states LDI must make all repairs to premises or equipment not occasioned by negligence or fault of Lansing Clarion. Notwithstanding Long's testimony that the Debtor performed all duties of repair and maintenance, the terms of the lease specifically provide for responsibilities of LDI. Because LDI and Lansing Clarion are controlled by the same insiders, one, or both, of which actually paid for taxes and insurance and made repairs and improvements,

Long's testimony regarding Lansing Clarion's actions must be discounted.[4] The court strongly believes the exhibits themselves, including the lease, are entitled to much greater evidentiary weight. Other examples of LDI's responsibilities are set forth in paragraph 7 and paragraph 10 of the lease. Paragraph 7 provides LDI shall make repairs in the event of partial destruction of the convention center. In such event, Lansing Clarion is entitled to a reduction in rental payments for the leased premises. Paragraph 10 of the lease allows Lansing Clarion to terminate the lease in the event of condemnation; if the lease is not terminated by Lansing Clarion, LDI must make the repairs. The lease itself mandates that Lansing Clarion does not assume and discharge substantially all of the risks and obligations relating to the convention center premises.

The cases which address similar issues are very fact intensive. There are really no direct factors which *always* and *regularly* apply to each transaction in dispute. Therefore, a court must look at all factors, including the factors set forth in the legislative history of § 502(b), to determine the key factor of the *economic substance* of the transaction.

The court finds: (1) because the rental payments continue long after the mortgage is satisfied, they are not, in substance, the payment of principal and interest on a secured loan; (2) regardless of the Debtor's unsuccessful attempt to exercise the option to purchase, the required purchase price constitutes additional consideration and is more than nominal; and (3) LDI is required to assume many of the risks and obligations of ownership under the lease. Applying § 502 factors, the court concludes the economic substance of the transaction mandates the lease is a true or bona fide lease.

---

3. The lease is ambiguous regarding the window period to exercise the option to purchase. One provision apparently states the window period is between the third and fifth year anniversary of the lease; another provision states the period is between the third and fourth year anniversary of the lease. (Plaintiff's Exh. 1; *compare* paragraph 18(b)(i) *with* paragraph 18(b)(ii).) Although the window period is ambiguous, the option to purchase price is not.

4. Other than Long's testimony, no other evidence was presented at trial whether Lansing Clarion or LDI paid these obligations.

852

The Debtor asserts that other cases decided, based upon assertedly similar facts, should persuade this court the lease is, in reality, a financing arrangement. The holdings in three well-reasoned circuit courts of appeals' cases support the Debtor's argument. *In re PCH Associates, supra; In re Moreggia & Sons, supra;* and, *International Trade Admin., supra.* While each of the cases considered purported nonresidential real property leases, the facts in those cases are entirely different regarding the economic substance of this lease transaction.

In *PCH Associates,* the Second Circuit held a transaction involving a sale-leaseback was not a true lease but was actually a financing arrangement. 804 F.2d at 201. In determining a financing arrangement existed, the court noted several unusual factors present in the sale-leaseback arrangement. First, lessee's agent solicited the lessor's investment to achieve tax benefits for the lessee and a higher guaranteed return for the lessor. Subsequently, rent was calculated exclusively to ensure the lessor's return on its investment and not for the use of the property. *Id.* at 200. Second, the purchase price paid by the lessor was based on the amount necessary to finance the transaction, not fair market value. *Id.* Third, the lessee assumed substantially all the risks attributed to ownership. *Id.* at 201. Fourth, the lessor was allowed to recover its investment if refinancing occurred. *Id.* Fifth, the lessee was entitled to prepay the investment but the lessor would solely share in these profits. *Id.*

The economic substance of the transaction before this court is totally different than the financing arrangement in *PCH Associates.* It is not a sale-leaseback. There is no persuasive evidence Lansing Clarion solicited LDI to enter into this transaction for a tax benefit, or any other benefit, except to establish a landlord/tenant relationship. There is no evidence the price paid by LDI was not based on market value or the convention center was specifically purchased for Lansing Clarion. As noted previously, according to the lease

itself, LDI retained substantial ownership obligations.

In *Moreggia & Sons,* the Ninth Circuit held the "Lease Agreement" entered into by the parties was in fact a financing arrangement. 852 F.2d at 1184. The Lease Agreement was a "peculiar" transaction between a displaced business and a nonprofit corporation, which was created to aid a municipality in relocating industries uprooted by a redevelopment project. The lessor sold bonds and used the proceeds to build a terminal in which the lessee "rented" space. *Id.* at 1184. The rent was not related to the value of possessing the terminal space and the lessee was not obligated to pay rent after the bonds were satisfied. The terminal was built mainly to allow the municipality to discharge a legal obligation to furnish space to displaced businesses. *Id.*

The economic substance of the transaction before this court is very different than in *Moreggia & Sons.* LDI did not sell bonds and use the proceeds to purchase the property. Lansing Clarion is required to continue making rental payments until December, 2015, while the underlying mortgage obligation is to be satisfied in January, 1992. Therefore, LDI will continue to receive monthly rental payments for approximately 13 years after LDI satisfies the mortgage. Additionally, the hotel was not built to satisfy a legal obligation from LDI to Lansing Clarion.

In *International Trade Admin.,* the Second Circuit held a ground lease did not qualify as a true or bona fide lease. 936 F.2d at 749. The lease was for a 99 year term and required a base rent in a total amount of $97,830 to be fully paid in three installments during the first three years of the lease. The lessee was also required to pay additional charges as "rent" during the entire lease term including "taxes, assessments, water and sewer rents, rates and charges, vault license fees or rentals, levies, license and permit fees, and all other governmental impositions and charges". *Id.* at 746. The court ruled that any of these factors standing alone may not constitute sufficient evidence to determine the

lease was not a true or bona fide lease. Considering the transaction as a whole, the court determined that the transaction was a hybrid between a lease and a sale. *Id.* at 750–51.

This court agrees with the principle stated in *International Trade Admin.* that one characteristic in a lease, standing alone, is *not* sufficient to establish a financing arrangement. For example, the "superficial shifting of costs in a triple net lease, taken alone, should not be interpreted to mean that an agreement is not a lease for purposes of § 365." *Id.* at 751. The ground lease in *International Trade Admin.* is totally different than the lease before this court. While the LDI lease is a triple net lease, it does not require the entire base rent to be paid within the first three years of the lease. The lease requires rental payments through the end of the lease term and beyond the satisfaction of the mortgage on the convention center property. The addendum to the Lansing Clarion lease specifically prohibits prepayment. (Plaintiff's Exh. 1.)

The economic substance of the transaction between LDI and the Debtor is that of a true or bona fide lease. While the court agrees with the analysis of the circuit court decisions discussed above, this transaction is factually different from those cases. Therefore, the court reiterates its holding that the transaction between LDI and the Debtor is a nonresidential real property lease. Consequently, Lansing Clarion must comply with the requirements of 11 U.S.C. § 365(d)(3) and (4).

### V. CONCLUSION

The court, based upon the exhibits, and Lansing Clarion's prior inconsistent pre-petition acts in accordance with Long's testimony, declines to accept the argument that this lease is a financing arrangement. Therefore, a declaratory order shall be entered that the lease, as amended, is a nonresidential real property lease within the meaning of 11 U.S.C. § 365.

Other issues, including New West's request for a determination that it is entitled to: (1) payment of $102,457.09 in post-petition unpaid rent; and (2) documentary confirmation the Debtor has paid post-petition taxes, utilities and insurance are held in abeyance; these issues shall be determined at the pending hearing regarding New West's motion for relief or modification of the automatic stay.