**In re AMERICAN PUNJAB CORPORATION.**

**Bankruptcy No. 289–08108–A–11.**

**Mto. No. JPG–4.**

United States Bankruptcy Court,
E.D. California.

Feb. 3, 1993.

Julia Gibbs, Folsom, CA, for Committee of Unsecured Creditors.

L. Burda Gilbert, Sacramento, CA, for Bank of America.

Steven Hrdlicka, Fresno, CA, for debtor.

## NOTICE OF INTENDED DECISION

LOREN S. DAHL, Chief Judge.

### INTRODUCTION

This case is a rather rare example of a debtor who files chapter 11 with substantial assets, pays its creditors through a chapter 11 plan, and emerges from the bankruptcy with a few less but nonetheless still with substantial assets.

Pursuant to the confirmed chapter 11 plan all creditors have been paid in full. Thus, although the present objection to the claim of Bank of America (Bank) was filed by the Committee of Unsecured Creditors (Committee) and joined by the debtor, the real party in interest is the debtor.

A brief review of the relevant background to this dispute should give the parties insight into the court's ruling today.

### FACTS

The debtor, a corporation engaged in the farming of peaches and prunes in Sutter County, filed a chapter 11 petition on December 5, 1989. In the statement of affairs and schedules filed at that time the debtor disclosed that it was the co-owner of six (6) parcels of real property along with its principals, Didar Bains and Santi Bains.

In schedule B-1 the debtor listed the value of the parcels at $19,654,500.

In the schedule of creditors holding security, the debtor listed Bank of America (Bank) as the holder of a second deed of trust against 101 acres of residential property and 116 acres of commercial property. On that schedule, the debtor stated that it owed $3,013,000 to the Bank and that the total amount it owed to all creditors who held security was $8,389,639.

On October 10, 1990, the Bank filed its proof of claim in the amount of $4,397,-867.81. After much negotiation amongst the Bank and Western Farm Credit Bank, the major secured creditors, the debtor, and the Committee of Unsecured Creditors (Committee), this court confirmed the joint chapter 11 plan proposed by the debtor and Western Farm Credit Bank on April 2, 1991.

The plan contains several provisions which bear mention. First, Article III, a description of the debtor's properties, listed eight (8) parcels of real property either used for planting prunes and peaches or zoned industrially. The estimated "quick-sale value" of these properties was stated to be $15,565,000.

Paragraph 6.05 explained that the impaired claim of the Bank was to be paid out of a combination of: sales proceeds from various parcels; foreclosure of one or more parcels; proceeds of a refinancing; crop proceeds in which the Bank held a perfected security interest; and, the sale or foreclosure of equipment in which the Bank held a perfected security interest.

Paragraph 7.03(5) stated that the Bank must be paid in full on or before April 15, 1992. Paragraph 7.20 stated that the Bank had a fully secured claim in the amount of $3,700,000 as of December 1, 1990 and that if the debtor paid the Bank in full within 180 days or more than 180 days but within one (1) year from the date of plan confirmation, the debtor would be entitled to a discount of $450,000 or $225,000, respectively. Paragraph 7.03(8) provided that if the unsecured creditors were not paid by November 1, 1992, the automatic stay would terminate

and all real and personal property of the estate would be marketed.

The plan at paragraph 7.20(1) contemplated that this court would have continuing jurisdiction to determine the reasonable amount of attorney's fees incurred by the Bank after December 1, 1990.

On March 24, 1992, the Committee filed the present objection to the proof of claim of the Bank. The Committee objected to the demand in escrow for attorney's fees made by the Bank. However, in order to take advantage of the discount in the amount of $225,000, the Committee requested that the debtor pay the Bank the full amount demanded while reserving the right to challenge the attorney's fee portion of that amount.

On April 1, 1992, the debtor paid the claim of the Bank in full from escrow but "under protest." The objection to the Bank's claim came on for hearing on April 20, 1992. On April 23, 1992, this court signed an order in which it found it had jurisdiction under the plan and the Code to determine the reasonableness of the fees paid to the Bank. The Bank was ordered to file with the court and serve on counsel for the Committee a detailed statement of services rendered, time expended, and costs incurred consistent with Fed.R.Bankr.P. 2016(a). The Committee also could file any evidence and declarations it desired and a response to the Bank's statement of services.

The objection came on for final argument on July 22, 1992. JULIA P. GIBBS, ESQ. represents the Committee, L. BURDA GILBERT, ESQ., of Weintraub, Genshlea & Sproul represents the Bank, and STEVEN R. HRDLICKA, ESQ., of Cowin & Hrdlicka appeared on behalf of the debtor.

## DISCUSSION

The Bank seeks the allowance of its fees pursuant to 11 U.S.C. sec. 506(b) for the period December 1, 1990 through April 1, 1992 in the total amount of $228,044.07. This amount is composed of the following:

| | |
|---|---|
| Fees paid to Weintraub, Genshlea & Sproul | $164,607.62 |
| Costs paid to Weintraub, Genshlea & Sproul | $ 8,773.38 |
| Bank in-house counsel fees | $ 24,949.70 |
| Trustee's fees | $ 29,713.37 |
| TOTAL | $228,044.07 |

The Bank was paid $214,359.14 through escrow and thus seeks payment of the balance remaining of $13,684.93. The Committee, joined by the debtor, strongly argue that the Bank's fees are excessive and unreasonable.

*Threshold Issues of Standing and Mootness*

1. Standing

The Bank initially argued that the Committee, since it would be paid in full, had no standing to object to the Bank's fees. In response, the Committee argued that it had a direct, monetary interest in reducing the attorney's fees claimed by the Bank. The Committee's argument continued that if the Bank was required to return money to the estate, the unsecured creditors could receive payment earlier than the deadline of November 1992.

It is fundamental that standing exists if a party can demonstrate the following three (3) elements: 1) actual or threatened injury resulting from the conduct of the opposing party; 2) injury which can be traced to the challenged action; and 3) injury which is likely to be redressed by a favorable decision by the court. *Matter of Lansing Clarion Limited Partnership*, 132 B.R. 845, 848 (Bankr.W.D.Mich.1991). An actual or threatened injury exists when a party's pecuniary interest may be affected by the outcome of the determination. *Id.*

Here, when the Committee first filed its objection to claim, it no doubt had standing to raise and prosecute the objection because it had not yet been paid and sought to protect its interest by being paid sooner. At the present time of this decision in February 1993, however, the Committee along with the remaining unsecured creditors have been paid. Thus, although the Committee initially did have standing the more relevant inquiry now is whether

or not the objection as to the Committee has become moot.

## 2. Mootness

■ It is well-settled that mootness will arise if a party has secured the requested relief by some means other than final decision of the litigation. *Wysocki v. Sullivan,* 761 F.Supp. 693 (C.D.Cal.1991); 13A C. Wright & A. Miller, *Federal Practice and Procedure,* sec. 3533.2 (2d ed. 1984). Once a matter has become moot, standing is destroyed. *Princeton University v. Schmid,* 455 U.S. 100, 103, 102 S.Ct. 867, 869, 70 L.Ed.2d 855 (1982).

■ The court must conclude that as to the Committee the issue of the reasonableness of the Bank's attorney's fees has become moot. Even if the Bank is required to return money back to the estate, the Committee, having now been paid in full, cannot be affected by the court's ruling. Although the issue has become moot as to the Committee, however, no doubt the debtor may be affected because any pay back by the Bank will inure to the benefit of the debtor.

## 3. Joinder

■ The Committee's objection to claim is a contested proceeding to which certain rules applicable to adversary proceedings apply. Fed.R.Bankr.P. 9014. Rule 7021 which incorporates Fed.R.Civ.P. 21 is one such rule. Rule 21 permits the court to add or drop parties on motion of any party or on its own initiative. It is within the court's discretion whether a party should be dropped or dismissed from an action.

*In re M & L Business Machine Co., Inc.,* 132 B.R. 433, 435 (Bankr.D.Colo.1991).

■ This court, in the exercise of its discretion under Rule 7021, finds that the debtor may join in the objection to the Bank's claim. This joinder is permitted in order to prevent what could be a multiplicity of litigation over this issue. *See* 7 *Federal Practice and Procedure,* sec. 1683 (2d ed. 1986).

## *The Reasonableness of the Bank's Fees*[1]

### 1. Fees of the Weintraub law firm

■ With these preliminary matters disposed of, the court turns to the underlying merits of the objection.

11 U.S.C. sec. 506(b) provides,

[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

In *In re Dalessio,* 74 B.R. 721, 723 (Bankr. 9th Cir.1987), the bankruptcy appellate panel held that when fees are provided for in the underlying agreement and the creditor is oversecured, the allowance of attorney's fees is mandatory. The court then set forth an oft-cited test in defining reasonableness:

[r]easonableness embodies a range of human conduct. The key determinant is whether the creditor incurred expenses and fees that fall within the scope of the

---

**1.** As a preliminary matter both the Committee and the Bank argue that *In re Fobian,* 951 F.2d 1149 (9th Cir.1991) should be interpreted in support of their respective positions. The court has reviewed *Fobian* and finds that it is inapposite. In that case the Ninth Circuit considered a request for payment of attorney's fees and costs by the prevailing party, Western Farm Credit Bank (Western). Western had cited various provisions in its note and deed of trust which provided for the payment of fees and costs incurred in collection of amounts due or enforcement of rights. The Ninth Circuit denied the request for attorney's fees incurred at all levels

holding that "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment." 951 F.2d 1153.

In the present case, the issue is the award of attorney's fees pursuant to 11 U.S.C. sec. 506(b). Here, unlike in *Fobian* a specific Code section allows such an award provided all of the other requirements of that section are met. The creditor in *Fobian,* unlike the Bank here, clearly was undersecured and could not have used sec. 506(b) in support of any fee request.

fees provision in the agreement, and took the kinds of actions that similarly situated creditors might reasonably conclude should be taken, or whether such actions and fees were so clearly outside the range as to be deemed unreasonable. The bankruptcy court should inquire whether, considering all relevant factors including duplication, the creditor reasonably believed that the services employed were necessary to protect his interests in the debtor's property.

The parties here apparently do not dispute that the underlying notes and deeds of trust contain provisions for attorney's fees and that the Bank is an oversecured creditor. Instead, the Committee and the debtor argue that the fees are unreasonable and excessive and the services performed unnecessary. In support of their position, the objectors point to the amount of attorney's fees incurred by them during this same relevant time period.

At present, this chapter 11 case consists of twenty-two volumes which chronicle the complexity of the proceedings which have taken place before this court. The court takes judicial notice of all of the pleadings which have been filed. The court is also well aware of the numerous other matters which the Bank and the debtor wrestled over including: confirmation by the superior court of the arbitration award in favor of the Bank; subordination agreements involving crop financing; disputes over crop proceeds; competing disclosure statements and plans of reorganization filed by the debtor and Western Farm Credit Bank; numerous proposals to sell various parcels of the debtor's real property often on shortened notice to the Bank; option agreements entered into by the debtor and potential buyers and subsequent requests to modify those agreements; and disputes over the payment of commissions to a real estate broker.

With these disputes in mind, the court has reviewed carefully the billing statements submitted by the Bank and must conclude, that with the exception of the in-house counsel fees, all of the fees incurred by the Bank were for necessary services and were reasonable.

In observing the conduct of this debtor and its counsel before this court, the court can understand the Bank's statement that in all its dealings with the debtor it had to verify, check, and recheck very thoroughly every detail. The debtor's conduct made it incumbent upon the Bank to act meticulously in any and all of its negotiations with the debtor over the myriad issues which arose. Failure to do so, as the Bank and this court believe, could have exposed the Bank to more litigation with a formidable adversary who was far from being impecunious to finance such litigation.

Considering the complexity of this case and the Bank's uncontroverted statement that the principals of the debtor often threatened to file individual chapter 11 petitions, the Bank was well-justified in thoroughly researching all of the bankruptcy law issues, the issues regarding the Bank's security interests in the real and personal property, tax issues, and acting defensively by planning for contingencies.

The court finds the Bank's fees in the amount of $164,607.62 and costs in the amount of $8,773.38 paid to the Weintraub law firm to be reasonable for the necessary services which were rendered.

### 2. In-house Counsel Fees

A bankruptcy court cannot approve compensation for duplicative services. *See In re Pacific Express, Inc.,* 56 B.R. 859, 863–64 (Bankr.E.D.Cal.1985); *In re Tom Carter Enterprises, Inc.,* 55 B.R. 548, 552 (Bankr.C.D.Cal.1985). The possibility of duplicative services is a relevant factor in deciding whether a creditor acted reasonably in protecting his interests in the debtor's property. *Dalessio,* 74 B.R. at 723 *citing In re Carey,* 8 B.R. 1000, 1004 (Bankr.S.D.Cal.1981).

During all relevant periods, both the Weintraub law firm and the Bank's own in-house counsel represented the Bank. Although the court makes no ruling on whether or not the services performed by the Bank's in-house counsel were necessary, the services performed cannot be

compensated from this estate. An allowance of the in-house counsel fees in this case would violate the very basic tenet that fees for duplicative services cannot be paid from the estate.

The Bank's in-house counsel fees in the amount of $24,949.70 will not be allowed.

### 3. Trustee's Fees

The Bank also seeks the allowance of its trustee's fees in the amount of $29,713.37. The Bank states that it incurred these fees in connection with foreclosures initiated by the Bank pursuant to three deeds of trusts executed by the debtor and Mr. and Mrs. Bains. The objectors argue that the Bank incurred these fees prior to December 1, 1990 and that, therefore, the charges are already included in the amount owed to the Bank as set forth in the confirmed plan.

 The court finds that it must overrule the objection as to the trustee's fees. The objectors do not provide the court with any evidence in support of their argument that this amount has already been included in the Bank's claim under the Plan. In proof of claim litigation, this unsupported allegation is insufficient to rebut the prima facie status of the claim. 3 *Collier on Bankr.* para. 502.01[3] (15th ed. 1992).

### CONCLUSION

The objection to the Bank's claim as to the Committee has become moot. The debtor, however, has a sufficient stake in the outcome of this matter and will be permitted to join the Committee in its objection.

All of the attorney's fees and costs billed by the Weintraub law firm and incurred by the Bank shall be allowed as reasonable charges for necessary services performed under 11 U.S.C. sec. 506(b). The Bank's in-house counsel fees, however, are duplicative and cannot be allowed. The trustee's fees incurred by the Bank shall be allowed.

The following accounting is a summary of the court's calculations:

| | |
|---|---|
| Fees of the Weintraub law firm to be allowed: | $164,607.62 |
| Costs of the Weintraub law firm to be allowed: | $ 8,773.38 |
| Trustee's fees to be allowed: | $ 29,713.37 |
| **TOTAL AMOUNT TO BE ALLOWED** | $203,094.37 |
| Amount received by Bank from close of escrow: | $214,359.14 |
| **TOTAL AMOUNT TO BE RETURNED TO THE ESTATE** | $ 11,264.77 |

---

Since the Bank has received $214,359.14 from the close of escrow but shall be allowed $203,094.37, the Bank shall return within ten (10) days from the date of entry of an order pursuant to this notice of intended decision, the amount of $11,264.77 to the debtor. This notice of intended decision shall constitute findings of fact and conclusions of law.

Counsel for the debtor shall prepare and submit an order consistent with this notice of intended decision.