**In re Robert Henry STAGGIE and Diane Lee Staggie, Debtors.**

No. 00–40683.

United States Bankruptcy Court, D. Idaho.

Nov. 1, 2000.

Steven A. Meikle, Idaho Falls, Idaho, for debtors.

Terry C. Copple, Davison, Copple, Copple & Copple, Boise, Idaho, for creditor Washington Federal Savings.

Charles Johnson, Johnson Olson Chartered, Pocatello, Idaho, for creditor American General Finance.

L.D. Fitzgerald, Pocatello, Idaho, Chapter 13 Trustee.

## MEMORANDUM OF DECISION RE DEBTORS' MOTION TO DETERMINE SECURED STATUS

JIM D. PAPPAS, Chief Judge.

### I. Background

Debtors Robert and Diane Staggie ("Debtors") filed a Motion to Determine Secured Status on September 5, 2000 (Docket No. 53). Creditor Washington Federal Savings ("Creditor"), the creditor whose claim Debtors seek to determine in the motion, objected. A hearing on Debtors' motion was held on September 19, 2000, after which the Court took the matter under advisement. This Memorandum constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052; 9014

### II. Facts

The following are the relevant facts which appear from the record to be undisputed.

In 1976, Debtors received a loan from First Security Savings and Loan Association secured by a deed of trust on Debtors' home. Creditor later succeeded to First Security's interest by merger. Over the years, Debtors paid down the loan balance considerably.

Debtors filed for Chapter 13 bankruptcy protection on May 1, 2000.[1] Shortly thereafter, on May 17, Creditor moved for relief from the automatic stay under Section 362(d) of the Bankruptcy Code, which motion was granted by the Court on June 26

(Docket No. 34). In the meantime, on June 16, Debtors moved the Court to approve the sale of their house. That approval was granted on July 28 (Docket No. 48). Additionally, the holder of the second position deed of trust, American General Finance Service Company ("AGF"), had been granted stay relief, and AGF had scheduled a trustee's sale to take place on August 30, 2000.

After considerable delay and difficulty, the sale of the property finally closed on August 29 for $105,000, only one day before the trustee's sale was to occur. From the closing, Creditor was paid the principal balance on its loan of $19,119.90, accrued interest and late charges of $2,169.06, and unpaid taxes and insurance of $1,096.04. In addition, Creditor was paid $3,782.43 for its attorney's fees and expenses. After the sale, Debtors filed the instant motion in which they assert the amount paid to Creditor from the sale on account of attorney's fees was unreasonable and excessive.

### III. Discussion

Debtors ask the Court to determine whether the amount of fees paid to Creditor was reasonable. The starting point for this analysis is Section 506(b) of the Bankruptcy Code, which provides that a creditor may recover attorney's fees if four elements are met:

(1) the creditor's claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; (4) the fees are provided for under the agreement.

*Kord Enterprises II v. California Commerce Bank (In re Kord Enterprises II)*, 139 F.3d 684, 689 (9th Cir.1998); *In re Good*, 97.2 I.B.C.R. 42, 43 (Bankr.D.Idaho 1997). In this case, the only element at issue is whether the attorney's fees

---

1. Debtors filed a previous Chapter 13 bankruptcy on June 20, 1997 (Case No. 97–40636), which was voluntarily converted to Chapter 7

on February 8, 1999, and closed on July 13, 1999.

charged by Creditor were reasonable.[2] The burden of establishing the reasonableness of attorney's fees is on the creditor. *In re Cushard*, 235 B.R. 902, 906 (Bankr. W.D.Mo.1999); *In re Church*, 1998 WL 97691, *5 (Bankr.N.D.Ill.1998); *In re Gwyn*, 150 B.R. 150, 156 (Bankr.M.D.N.C. 1993); *In re CVC, Inc.*, 120 B.R. 877, 880 (Bankr.N.D.Ohio 1990). The standard employed to determine "reasonableness" is one based on federal law. *Kord Enterprises II*, 139 F.3d at 689.

## A. Mootness, Waiver, and Estoppel

As might be expected under these unusual facts, Creditor asserts the Court does not have the authority to consider the reasonableness of the attorney's fees it charged Debtors because the collateral securing its debt has been sold. Creditor argues that since its claim has been paid in full, there is no secured claim which the Court can allow (or disallow) under Section 506(b). Therefore, Creditor asserts any issues raised by Debtors' motion are moot.

Creditor also believes it has been the victim of a scheme in this case. Creditor suggests Debtors intentionally induced it to reconvey the deed of trust in order to destroy Creditor's secured status, so they could challenge, after-the-fact, Creditor's entitlement to the attorney's fees and costs received from the sale proceeds, without risking loss of additional fees to be incurred by Creditor in this litigation. In addition to asserting this issue is now moot, Creditor also argues that Debtors have waived, or, in the alternative, are estopped from challenging the reasonableness of the attorneys fees by authorizing payment from the closing to Creditor in the amount it requested.

### 1. Mootness

Creditor has not cited, nor has the Court located, any authority indicating that a sale of a secured creditor's collateral renders moot any review of the creditor's right to recover attorney's fees pursuant to Section 506(b). The Court did, though, discover at least one decision which considered Section 506(b) in an analogous situation.

In *In re American Punjab Corp.*, 150 B.R. 763 (Bankr.E.D.Cal.1993), a Chapter 11 case, both the unsecured creditors' committee and the debtor objected to the amount of the oversecured bank's attorney's fees. A plan was confirmed, and consideration of the objections deferred. Prior to the objections being heard, the property was sold and the proceeds disbursed in order to take advantage of a discount offered by the bank if its claim was paid by a certain deadline. The bank was paid in full, but "under protest." The unsecured creditors' claims were also paid in full. *Id.* at 764–65. When the objection finally came on for hearing, the court concluded that the committee's objection to the bank's attorney fees was moot because the unsecured creditors had already been paid in full. *Id.* at 766. However, the court found the attorney fee issue was not moot as to the debtor, despite confirmation of the plan and the sale of the property. The court concluded because any excessive amounts paid to the bank could be returned, and would thereby inure to the debtor's benefit, the debtor's objection to the amount of the fees should be addressed on the merits. *Id.*

Other decisions indicate the bankruptcy courts have the responsibility, *In re Gwyn*, 150 B.R. at 154, and the inherent authority to review creditor attorney's fees and costs for reasonableness. *In re Parke Imperial Canton, Ltd.*, 1995 WL 362873, *2 (Bankr. N.D.Ohio 1995). Because of the special protection that Section 506(b) provides oversecured creditors, "it must be remembered that the Court possesses inherent discretion to review any award of fees under Section 506(b) for potential abuse of

---

**2.** It is not disputed that the promissory note and deed of trust both contain provisions allowing for the recovery of reasonable attorney's fees and expenses. It is also not disputed that prior to sale, Creditor had an allowed secured claim which was oversecured.

this right." *In re Mills*, 77 B.R. 413, 419 (Bankr.S.D.N.Y.1987). *See also, First Bank of Ohio v. Brunswick Apartments of Trumbull County, Ltd. (In re Brunswick Apartments of Trumbull County, Ltd.)*, 215 B.R. 520, 524 (6th Cir. BAP 1998), *aff'd*, 169 F.3d 333 (6th Cir.1999) ("Section 506 of the Code grants broad discretion to the bankruptcy court to determine the reasonableness of the fees requested"). This is true even in the absence of an objection. *In re Ward*, 190 B.R. 242, 245 (Bankr. D.Md.1995).

 Taken together, these authorities persuade the Court that its authority to review Creditor's attorney's fees for reasonableness under Section 506(b) does not end simply because the collateral was sold during the pendency of the bankruptcy case. The amount of Creditor's attorney fees are not just a matter of private negotiation in which the bankruptcy court has no interest. *Blackburn–Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1054 (5th Cir.1986); *In re Beyer*, 169 B.R. 652, 656 (Bankr.W.D.Tenn.1994). Here, if attorney's fees are found to be unreasonable, any excess could be refunded by Creditor and would benefit the Debtors. Because an effective remedy can be fashioned, the issues raised by Debtors' motion are not moot.

## 2. Waiver

In response to Creditor's arguments, Debtors assert they did not challenge the requested fees because of the need to promptly close the sale. If they had delayed, the buyer would have lost her loan commitment. Additionally, because AGF had noticed its foreclosure sale for August 30,[3] Debtors were forced to close the sale by August 29 or face loss of the property. *See* Letter dated August 30, 2000, attached as exhibit to Affidavit of Charles Johnson on Attorney's Fees (Docket No. 60).

 Creditor cites the closing documents signed by Debtors, and contends Debtors waived any right to challenge the reasonableness of attorney's fees paid in connection with sale of the property. One of the documents contains the following representations:

I have carefully reviewed the HUD–1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD–1 Settlement Statement. I hereby authorize the Settlement Agent to make expenditures and disbursements as shown above and approve same for payment.

Exhibit A, attached to Affidavit of Angela Thorp of Alliance Title and Escrow Corp. (Docket 64). Additionally, Debtors initialed a detailed payoff statement from Creditor which listed foreclosure and legal expenses of $3,782.43. Exhibit C, attached to Affidavit of Angela Thorp of Alliance Title and Escrow Corp. (Docket 64).

While Debtors no doubt signed these documents, doing so did not effect a waiver. Any representations contained in the documents were directed to the title company acting as closing agent for the sale. The representations were intended to protect the title company from any later challenge concerning its disbursement of the proceeds from the sale. Such can not be seen as a knowing relinquishment of Debtors' right to challenge the amount of Creditor's attorney's fees under Section 506(b).

In an analogous Chapter 11 case, the debtor's confirmed plan provided the bank's mortgage would be brought "contractually current." However, after the bank sought its attorney's fees in addition to missed payments, the debtor challenged the reasonableness of the fees. There, the court held that although the confirmed plan entitled the bank to believe that its claims would be paid, "[t]he provision did

**3.** Creditor had also noticed its own foreclo- sure sale for December 6, 2000.

not ... waive the Debtor's rights to seek an evaluation of the extent to which [the bank's] claim was secured or an evaluation of the reasonableness of the fees and costs" requested. *Citicorp Savings of Florida v. Oliver (In re Oliver)*, 183 B.R. 87, 90 (Bankr.W.D.Pa.1995). As in *Oliver*, this Court finds Debtors did not waive their right to seek a determination of reasonableness under Section 506(b) by making the subject representations to the title company.

### 3. Estoppel

■ Finally, Creditor alleges that Debtors should be estopped from challenging the attorney's fees charged in this case, believing that Debtors deliberately and strategically delayed their challenge until the sale was completed so as to prejudice Creditor's entitlement to further reasonable attorney's fees. For support, Creditor points out that Debtors' motion was apparently signed by their attorney on August 23 (prior to the sale), but not filed and served until September 5 (after the sale).

Without more evidence in the record, the Court remains unconvinced that Debtors' actions, and the chronology of events in this case, amount to anything more than a reaction to a looming foreclosure deadline. Debtors are not estopped from bringing their motion, and the Court will consider the reasonableness of attorney's fees as discussed below.

### B. Reasonableness of Attorney's Fees

■ The sole issue concerning determining the amount of Creditor's allowed secured claim here is the reasonableness of the amount Creditor was paid for attorney's fees. As this Court has stated:

the reasonableness requirement concerns a standard that 'necessarily employs vague, deliberately broad boundaries....' The Court must determine the reasonableness [of a creditor's attorney's fees] based on all relevant factors and whether the creditor reasonably be-

lieved that the steps taken were necessary to protect its interests in the debtor's property. However a Court must view a creditor's decisions objectively to see that an 'oversecured creditor is not given a blank check to incur fees and costs which will automatically be reimbursed out of its collateral.'

*In re Pope*, 91 I.B.C.R. 141, 143 (Bankr.D.Idaho 1991) (internal citations omitted). The reasonableness requirement in Section 506(b) was intended to prevent creditors from "fail[ing] to exercise restraint in the attorneys' fees and expenses they incur, perhaps exhibiting excessive caution, overzealous advocacy and hyperactive legal efforts." *In re Gwyn*, 150 B.R. at 156; *see also In re Lund*, 187 B.R. 245, 251 (Bankr.N.D.Ill. 1995). If proper restraint is not exercised, the costs of any "overlawyering" should be borne by Creditor, rather than Debtors. *In re Ward*, 190 B.R. at 250.

■ Certain facts seem especially important in this case. At the time of the bankruptcy and sale, Creditor was owed about $20,000 in principal, together with approximately $3,000 in accrued interest, late charges, and unpaid insurance and taxes. Creditor's claim was secured by a first priority trust deed on Debtor's home valued in the bankruptcy at $85,000 to $90,000, and ultimately sold for $105,000. Moreover, AGF held a second trust deed on the property to secure a substantial loan balance, and if it came to a sale, AGF would have been required to satisfy Creditor's claim to protect its own position. Given these circumstances, and the substantial difference between the amount of its loan and the value of the house, it appears Creditor was never truly at risk of not getting paid in full, no matter what actions were taken by Debtors in the bankruptcy case or by the second position deed of trust holder. *In re F.B.F. Industries, Inc.*, 1995 WL 691893, *5 (Bankr. E.D.Pa.1995) ("given the Bank's comfortably oversecured position, the necessity of comprehensive involvement to protect its

security is not apparent"). On this basis alone, Creditor's claim for over $3,200 in fees does not seem justified. However, a more detailed review of Creditor's requested attorney fees reveals other problems. They are discussed below.

### 1. Reasonableness of Hourly Rate

█ This Court routinely approves fee for professionals involved in consumer bankrupcy cases at rates ranging from $100 to $125 per hour. Creditor's attorneys' ("Counsel") hourly rate charged to Creditor (and ultimately, Debtors) in this case was apparently $175. Such a rate is at the highest end of the scale allowed in the most complicated business reorganization cases litigated in this District, and has never been approached in simple Chapter 13 proceedings. While Counsel is known to the Court to be extremely competent and is entitled to charge whatever rate its clients will agree to pay, this Court will not require Debtors to bear the burden of such a rate in this context.

However, Counsel points out it voluntarily agreed to reduce the fees it would normally charge from $4,669.00 to $3,229.78 "In order to facilitate the sale of the property." This results in an effective rate of approximately $121 per hour which appears reasonable to this Court. Therefore, the $3,229.78 actually received, and the reduced rate, will be the starting point for further analysis below.

### 2. Lumping

█ Recall, Counsel and Creditor bear the burden of proving the attorney's fees paid in this instance were reasonable. *In re Cushard*, 235 B.R. at 906; *In re*

*Church*, 1998 WL 97691 at *5; *In re Gwyn*, 150 B.R. at 156; *In re CVC, Inc.*, 120 B.R. at 880. To support the claim, Counsel has provided a description of the services provided to Creditor in this case. Unfortunately, there is a significant impediment to an effective review of this time accounting. While Counsel's billing summary is sufficiently detailed, it fails to break down each day's tasks into corresponding time entries. Instead, each day's activities are listed together and a block of time is assigned for the entire day. Counsel's fee summary consists of seventeen entries, each one of which consists of multiple tasks grouped together.[4] This type of billing practice is known in bankruptcy parlance as "lumping," and is

> universally disapproved by bankruptcy courts for two reasons. One, it permits an applicant to claim compensation for rather minor tasks which, if reported individually, would not be compensable. Two, it prevents the Court from determining whether individual tasks were expeditiously performed within a reasonable period of time because it is impossible to separate into components the services which have been lumped together.

*In re Automobile Warranty Corp.*, 138 B.R. 72, 76 (Bankr.D.Colo.1991) (exhaustive list of citations omitted).

█ Because of the lumping, the Court concludes Creditor has not met its burden of proving that all claimed fees are reasonable. Courts have taken various approaches when confronted with lumped fees. These approaches range from assessing a twenty to forty percent across-the-board reduction for all fees, *In re Ward*, 190 B.R. 242, to reducing the total

---

4. The following entry for May 15 is representative of these lumped entries:

Draft and revise letter to opposing counsel for borrower on amount due and owing on foreclosure; Analyze and review bankrupcy pleadings filed in Chapter 13; Analyze and review documentation filed with bankruptcy court from 1997's bankruptcy; Analyze and review equity position in real property by analysis of existing documentation relating to fair market value of real property; Long distance telephone conference with Washington Federal Savings on status of foreclosure; Telephone call with Pioneer Title on status of foreclosure; Analyze and review foreclosure documents filed to date in foreclosure; Analyze and review possible grounds for filing motion to dismiss case; Calculate amount necessary to cure default by borrower.

amount of fees by more than half, *In re Oliver*, 183 B.R. at 91, to denying compensation entirely for all entries which are lumped together. *In re Breeden*, 180 B.R. 802, 810 (Bankr.N.D.W.Va.1995). From the description of services here, it is obvious Counsel provided valuable services to Creditor. However, the Court is left to its own resources in determining what time was spent on Counsel's specific services. The Court has taken this problem into account in making its final fee determination below.

### 3. Noncompensable services.

■■■■■ Additionally, Counsel has evidently billed for several nonprofessional tasks for which Counsel should not be compensated which are lumped together with other, compensable services. For example, there are several entries in the time accounting for drafting and revising cover letters to the clerk or for preparing affidavits of mailing, all of which should have been delegated to clerical staff.[5] Several entries also appear for reviewing or calculating payoff amounts, reviewing title documents, and preparing the proof of claim, tasks which the Court believes are better left to Creditor's own staff.[6] *In re Good*, 97.2 I.B.C.R. at 43. There are also several entries which appear duplicative.[7] Because each of these entries are lumped together with other tasks, the Court must

rely on its own knowledge and experience to determine how much time these tasks likely required. *In re Oliver*, 183 B.R. at 91. Again, the Court will consider this concern in its final decision.

Finally, while it is difficult to understand, in a four-hour block of time billed on August 22, 2000, Counsel includes charges for legal research regarding the Fair Debt Collection Practices Act "raised by Staggies' attorney." However, it appears from the record this issue was not raised by Debtors' attorney until September 5, when the Motion to Determine Secured Status was filed with the Court. At hearing and in the pleadings Counsel professed no knowledge that Debtors were challenging Creditor's loan payoff until receipt of Debtors' motion. See Response to Motion to Determine Secured Status, pp. 5–7. The Court can only assume that while Counsel may have performed the services, the date the services were provided is seemingly inaccurate.[8]

### C. Extent of Services

The Court also has a concern about the extent of services provided by Counsel to Creditor in this instance. Recall, Creditor's claim was not in serious jeopardy of nonpayment. While Creditor was justified in moving for stay relief and protecting its interest under Debtors' proposed plan, and

---

5. Some examples of these entries appear on May 16, June 15, June 22, and July 5.

6. Billing entries for May 15, May 16, July 5, and August 22 contain these types of tasks. It must be kept in mind, Creditor is a sophisticated lender with, presumably, experienced employees and officers capable of analyzing its own position in this case. Under the circumstances, it is not unreasonable to expect Creditor's own staff to fill in the blanks of the form for a proof of claim, or to complete a loan payoff statement.

7. For example, on May 15, Counsel billed for time spent to "[a]nalyze and review equity position in real property by analysis of existing documentation relating to fair market value of real property." Then on May 18, an entry appears to "[a]nalyze and review information relating to value of real property in

bankruptcy for purposes of determining equity position in property, if any." A second example of duplicative services appears on May 15 when Counsel charged for reviewing foreclosure documents filed to date, and the same work was again charged for on July 5. Finally, on July 5, time was billed to "[a]nalyze foreclosure documents filed by second deed of trust holder," and another, nearly identical entry appears on July 19.

8. While Creditor's alleged failure to comply with the Fair Debt Collection Practices Act was raised by Debtors in their motion, no authority was cited nor argument made in support of this position in the motion or at hearing. Therefore, the Court will not consider the argument here.

while Creditor was required to cooperate in Debtors' efforts to sell the house, there was no real need for other significant involvement in the case by its lawyers. In fact, Counsel documents about 27 hours spent working on the case. To the Court, this is beyond reasonable.

Counsel also offers no explanation why, under these facts, a substantial portion of the services could not have been provided by associates or paralegals. Preparing routine pleadings and supporting documents in a straight-forward Chapter 13 case certainly seem to present an appropriate opportunity to utilize the services of less experienced, and more importantly, less expensive legal staff.

### D. Accruing Fees and Expenses

■ Creditor also alleges entitlement to additional attorney's fees and expenses incurred in responding to Debtors' motion. Creditor has not documented the amount of fees and costs it has incurred. Moreover, because the Court finds merit in Debtors' complaints about the amounts charged by Creditor, Creditor is not entitled to its attorney's fees and expenses incurred here.

■ Similarly, Debtors request an award of attorney's fees incurred in bringing their motion. However, Debtors do not set forth any legal basis for this award. Absent a specific provision in the Bankruptcy Code, or some provision in the parties' contracts, Debtors are not entitled to an award of attorney's fees and expenses in this matter.

### IV. Conclusion

For the reasons stated above, the Court concludes the amount of attorney fees Debtors paid to Creditor in this case was unreasonable under Section 506(b). Based upon all the factors identified above, the Court concludes that Creditor should not be compensated for more than 15 hours of attorney time in this case. Using Coun-

9. Debtors did not question this amount.

sel's compromise rate of $121 per hour, this would entitle Creditor to attorney fees of $1,815.00. Creditor was also entitled to recover its attorneys' out-of-pocket costs in the sum of $552.65.[9] Because Creditor collected $3,782.43 for attorney fees and costs, Creditor should be required to refund a total of $1,414.78. Creditor shall be ordered to pay this amount to the Chapter 13 Trustee for disbursement in accordance with the Debtors' confirmed Chapter 13 plan to the parties entitled thereto.

A separate order will be entered by the Court.