**In re Kimberly Rae RANSOM, Debtor.**

**No. 06–60606–13.**

United States Bankruptcy Court,
D. Montana.

Jan. 16, 2007.

Kraig C. Kazda, Hartelius, Ferguson, Baker and Kazda, Great Falls, MT, for Debtor.

### MEMORANDUM OF DECISION

RALPH B. KIRSCHER, Bankruptcy Judge.

An objection filed by the Chapter 13 Trustee, Robert G. Drummond ("Drummond"), of Great Falls, Montana, to the proof of claim, claim no. 3, filed by the Estate of Carl B. Field is pending before this Court. The Court originally set the objection for hearing on November 15, 2006, with notice to the parties in interest. Steven M. Johnson ("Johnson"), of Great Falls, Montana, who represents the Estate of Carl B. Field ("the Estate"), moved the Court for a continuance of the hearing, to which Drummond agreed. The Court rescheduled the hearing for December 14, 2006. On November 28, 2006, Drummond and Johnson stipulated to facts and filed a stipulation at doc. # 40, which the Court approved. The Court vacated the rescheduled hearing set for December 14, 2006. Pursuant to the approved stipulation, Drummond and Johnson agreed to submit the objection to proof of claim no. 3 to the Court on the stipulated facts and to submit simultaneous briefs on of before December

20, 2006, on the stipulated issue involving whether the Estate was entitled to attorneys fees in an amount exceeding the statutory limits provided by MONT.CODE ANN. ("MCA") § 71–1–320 when Debtor's confirmed Chapter 13 plan cures the arrearages through the plan. On December 20, 2006, Drummond filed his brief in support of his objection. Johnson has not filed a brief in support of the Estate's proof of claim and in opposition to Drummond's objection. The Court does however note that the Estate has assigned its proof of claim no. 3 the Leland Stanford Junior University, by assignment dated December 4, 2006, which was filed with the Court on January 5, 2007, as doc. #45. The briefing time period has expired and this contested matter is ready for a decision. This memorandum of decision contains this Court's findings of facts and conclusions of law.

## STIPULATED FACTS

Drummond and Johnson, on behalf of the Estate, filed a stipulation of facts, which follow:

1. This Stipulation relates to the Chapter 13 Bankruptcy case of Kimberly Rae Ransom filed in the United States Bankruptcy Court for the District of Montana on July 28, 2006.

2. The objecting party, Robert G. Drummond, was appointed Chapter 13 Trustee in the above-entitled matter pursuant to 11 U.S.C. § 1302 and 28 U.S.C. § 586.

3. The respondent, the Estate of Carl B. Field, was scheduled as a creditor in the above-entitled matter. The Estate of Carl. B Field filed a proof of claim, listed as Claim No. 3 on the Court's claims register.

4. The parties stipulate and agree that the subject of this Stipulation relates to the claim of Carl B. Field, listed as Claim No. 3 on the Court's claims register.

5. The parties stipulate and agree that the claim of the Estate of Carl B. Field is properly allowed as a secured claim. The parties stipulate and agree that the Estate of Carl B. Field is secured by a Trust Indenture on the Debtor's residential of real property.

6. The parties stipulate and agree to the admission of Claim No. 3 and the attached document as an exhibit in the underlying matter.

7. This whole subject of this dispute is the proper amount of "creditor's legal costs and fees" that maybe allowed under Montana law and included in the secured claim.

8. The parties agree that the factual record shall be complete upon submission of this Stipulation and request that the Court enter an Order [setting] a briefing schedule.

## PROOF OF CLAIM NO. 3 FILED BY THE ESTATE

The Estate filed a proof of claim, claim # 3, secured by real estate in the secured claim amount of $43,258.98. The filed proof of claim contains an attachment, which follows:

### STATEMENT OF ACCOUNT

I. SECURED CLAIM

Principal ......................... $28,605.73
Unpaid interest to 9/25/06 .............. 3,617.86 *

Total Principal & Interest as of
 9/25/06 ......................... 32,223.59

*PLUS*

Attorney fees ...................... 10,574.00
Costs (foreclosure, etc.) ................. 471.39
TOTAL SECURED CLAIM as of
 9/25/06: ........................ $43,268.98
(plus continuing postpetition interest
 and authorized charges)

II. PREPETITION ARREARAGES:

A) 23 months unpaid monthly
   installment payments X
   $287.63/month ................ $ 6,615.49
B) late charges of $14.83/month × 23
   months ........................ 341.09
C) costs (title report, foreclosure costs)... 471.39
D) Creditor's legal costs & fees to
   7/28/06 ........................ 6,576.00

TOTAL ARREARAGES ............ $14,003.97

\* The Debtor's two postpetition payments have been applied against accrued, unpaid interest.

## MONTANA STATUTE

Mont.Code Ann. § 71–1–320 provides:

Reasonable trustees' fees and attorneys' fees to be charged to the grantor in the event of foreclosure by advertisement and sale shall not exceed, in the aggregate, 5% of the amount due on the obligation, both principal and interest, at the time of the trustee's sale. If prior to the trustee's sale the obligation and the trust indenture shall be reinstated in accordance with provisions of 71–1–312, the reasonable trustees' fees and attorneys' fees to be charged to the grantor shall not exceed the lesser of $1,000 or 1% of the amount due on the obligation, both principal and interest, at the time of default. In no event shall trustees' fees and attorneys' fees be charged to a grantor on account of any services rendered prior to the commencement of foreclosure.

An additional statute, MCA § 71–1–312 provides in pertinent part:

(1) Whenever all or a portion of any obligation secured by a trust indenture has, prior to the maturity date fixed in such obligation, become due or been declared due by reason of a breach or default in the performance of any obligation secured by the trust indenture, including a default in the payment of interest or of any installment of principal or by reason of failure of the grantor to pay, in accordance with the terms of such trust indenture, taxes, assessments, premiums for insurance, or advances made by the beneficiary in accordance with the terms of such obligation or of such trust indenture, the grantor or his successor in interest in the trust property or any part thereof or any other person having a subordinate lien or encumbrance of record thereon or any beneficiary under a subordinate trust indenture, at any time prior to the time fixed by the trustee for the trustee's sale if the power of sale is to be exercised, may pay to the beneficiary or his successor in interest the entire amount then due under the terms of such trust indenture and the obligation secured thereby (including costs and expenses actually incurred and reasonable trustee's and attorney's fees) other than such portion of the principal as would not then be due had no default occurred and thereby cure the default theretofore existing.

(2) Thereupon all proceedings theretofore had or instituted to foreclose the trust indenture shall be canceled and the obligation and the trust indenture shall be reinstated and shall be and remain in force and effect the same as if no such acceleration had occurred.

\* \* \*

## CONTENTIONS

Drummond contends that the attorney's fees requested by Johnson, as attorney for the Estate, in the Estate's proof of claim no. 3, should be limited to an amount not to exceed $1,000 or 1 % of the principal and interest due on the note secured by the trust indenture and further contends that as no fee application has been filed Johnson's fees should be disallowed in their entirety. Johnson, although not filing a brief, apparently is taking the position that his fees and costs should be allowed in their entirety by identifying his fees on the filed proof of claim.

## DISCUSSION

An oversecured creditor under 11 U.S.C. § 506(b) may recover interest on the principal, and reasonable fees, costs or charges provided under the agreement or State statute. Under 11 U.S.C. § 1322(e), a debtor may cure a default in accordance with "the underlying agreement and applicable nonbankruptcy law." As noted above in MCA § 71-1-312, a debtor may cure a default under a note secured by a trust indenture "by the grantor ... at any time prior to the time fixed by the trustee for the trustee's sale if the power of sale is to be exercised, [paying] to the beneficiary ... the entire amount then due under the terms of such trust indenture and the obligation secured thereby (including costs and expenses actually incurred and reasonable trustee's and attorney's fees) other than such portion of the principal as would not then be due had no default occurred ...." Through Debtor's confirmed plan, she is committed to paying the unimpaired debt to the Estate outside the plan while paying all arrearages through the plan. Debtor's confirmed plan provides in paragraph 2(d):

> [d] **Unimpaired Secured Claims.** The following secured creditors, whose claims will be left unimpaired by this plan, are not provided for by this plan and shall receive no payments through the trustee except with regard to those arrearages specified below, if any:
>
> Name of Creditor      Description of Collateral
> Estate of Carl Field   Home
>
> Concurrently with the payments on impaired secured claims specified above, the following arrearages on unimpaired secured claims, if any, shall be paid through the Trustee until the same have been paid in full:
>
> Name of Creditor      Amount of Arrearage
> Estate of Carl Field   $7600.00

As noted in the Statement of Account attached to the proof of claim no. 3, the Estate calculates the arrearages as follows:

II. PREPETITION ARREARAGES:

A) 23 months unpaid monthly
   installment payments X
   $287.63/month ................. $ 6,615.49
B) late charges of $14.83/month × 23
   months ......................... 341.09
C) costs (title report, foreclosure costs)... 471.39
D) Creditor's legal costs & fees to
   7/28/06 ........................ 6,576.00

TOTAL ARREARAGES .............. $14,003.97

In 2001, this Court in *In re Michnal*, 19 Mont. B.R. 410, 415 (Bankr.D.Mont.2001), held that a creditor is required to file a fee application so the Court is able to review and consideration the reasonableness of prepetition and postpetition fees and costs pursuant to F.R.B.P.2016(a) and Mont. LBR 2016-1 when the creditor wishes to be paid from debtor's estate. A creditor has the burden of proof to establish the reasonableness of fees and costs pursuant to 11 U.S.C. § 506(b) or any other appropriate statute. *See In re Staggie*, 255 B.R. 48, 51-2 (Bankr.D.Idaho 2000) and *In re Kord Enterprises II*, 139 F.3d 684, 687, 689 (9th Cir.1998). Subsequent to *Michnal*, the Bankruptcy Appellate Panel ("BAP") in *Atwood v. Chase Manhattan Mortgage Co. (In re Atwood)*, 293 B.R. 227, 231-32 (9th Cir. BAP 2003) provided the following instructive conclusion:

> The first question is whether it is procedurally correct for a creditor to assert that its debt includes attorney's fees and establish the amount of such fees via a proof of claim. The debtors assert that an application for compensation under Rule 2016 is the exclusive method for establishing such fees.
>
> The facts of this case implicate two separate sections of the Bankruptcy Code. First, it appears that Chase Manhattan is an oversecured creditor with a § 506(b) right to fees under the underlying agreement. Second, debtor's plan requires determination of the amount

necessary to cure their default on the Chase Manhattan debt, as permitted by § 1322(b).

Section 506(b) permits oversecured creditors to claim attorney's fees:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

Section 1322(b)(3) authorizes a chapter 13 plan to provide for the curing of any default, with the law governing the determination of the cure amount specified by § 1322(e):

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable bankruptcy law.

Although § 1322(e) appears to trump § 506(b), both sections potentially pertain when a secured creditor files a proof of claim, because it will not always be apparent that the debtor's chapter 13 plan will cure the default, and the case may be converted to or from chapter 7. The Code does not establish specific procedures for determining § 506(b) claims and § 1322 cure amounts.

Rule 2016(a) does not explicitly cover, but may be read broadly enough to include secured creditors' claims for fees:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested .... The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity

Nor is there a relevant local rule or administrative order in the District of Nevada. *See also In re Plant*, 288 B.R. 635, 641–44 (Bankr.D.Mass.2003) (discussing interplay of §§ 506(b), 1322(e), and Rule 2016); per local rule, Rule 2016 fee application is not required if no party objects.

(Notes omitted).

BAP in *Atwood* further followed *In re Powe*, 281 B.R. 336 (Bankr.S.D.Ala.2001), which concluded "that either a fee application complying with § 503 and Rule 2016, or a proof of claim specifically claiming the fee, is sufficient for due process. Either procedure gives debtors an opportunity to object and be heard." *Atwood*, 293 B.R. at 232. BAP in *Atwood*, further stated "in addition to a Rule 2016(a) application, a proof of claim may be procedurally appropriate. Because § 506(b)'s applicability is limited to expenses 'provided for under the agreement under which such claim arose,' those expenses are inherently part of the pre-petition claim, although contingent and although the services may have been rendered post-petition." (Citations omitted). "We do not exclude the possibility that other procedural vehicles could also be pressed into service to resolve creditors' fees and charges." *Atwood*, 293 B.R. at 232. BAP further stated that the creditor "had the affirmative burden of showing reasonableness as a matter of law, the objection, . . ., need only note the absence of any such showing, and does not require

evidence in support." *Atwood*, 293 B.R. at 233.

In reviewing the Estate's proof of claim no. 3, two entries for fees and costs are set forth. In the first section of the Statement of Account, the Estate references principal and interest and calculates unpaid interest as of September 25, 2006, when in fact Debtor filed this case on July 28, 2006. Then the Estate states that attorney fees amounted to $10,574.00 and costs for foreclosure, etc., amounted to $471.39. No itemizations are included so this Court can consider the reasonableness of the fees or costs. What is included in the calculations? Were any of the fees incurred prior to the Estate commencing a nonjudicial foreclosure (MCA § 71–3–320 precludes fees incurred prior to the commencement of a nonjudicial foreclosure)?. At what hourly rate did Johnson charge the Estate? Did Johnson have prepetition fees of $6,576.00? Did Johnson incur postpetition fees of $3,998? To which date is interest paid on the principal? What is the per diem interest charge on the principal since the date when interest was paid currently on the principal? Are the attorney fees of $10,574 calculated as of September 25, 2006? The Estate states that costs on the secured claim amount to $471.39, yet the Estate then states in the Prepetition Arrearage portion of the Statement of Account the costs amount to $471.39 and then in the next entry the Estate states the "Creditor's legal costs & fees to 7/28/06 amount to $6,576.00. Does the amount of $6,576.00 only include fees or are costs also included in that amount that are included in the costs of $471.39?" Then in concluding section I of the Statement of Account, the Estate calculates its total secured claim as of 9/25/06 [the date the claim was filed and not the bankruptcy petition date that was 7/28/06] as "$43,-268.98, (plus continuing postpetition inter-est and authorized charges)." What is the per diem interest rate?

In section II of the Statement of Account as fully set forth above, it is unclear as to which monthly payments are unpaid. Reference is only made to "23 monthly unpaid monthly installment payments." Are these 23 monthly payments calculated from the date of Debtor's bankruptcy filing on 7/28/06 or from the date the Estate filed the proof of claim on 9/25/06?

The stipulated facts submitted to this Court do not address any of the above questions. If Johnson on behalf of the Estate had filed a fee and cost application, many of the questions raised above would have been addressed. In *Michnal*, this Court concluded a fee application was required for both pre- and postpetition creditor's fees pursuant to F.R.B.P.2016(a) and Mont. LBR 2016–1 (which specifically requires an application if creditors wish to be paid from debtor's estate). Such local rule has be effective since December 1, 2001. This adopted local rule distinguishes this case from *Atwood*. As noted in the quotation above from *Atwood* no local rule or administrative order had been promulgated concerning a creditor's attorney filing a fee application and no F.R.B.P.2016 application was required in Nevada if an objection was filed.

The fact that the Estate and Johnson failed to consider the instructive observation contained in *Michnal*, albeit dicta, is surprising to this Court, especially as that case is based on the consideration of what should be identified in a proof of claim and how the calculations for the secured claim and the arrearage should be calculated, both by Mont. LBR 2016–1(d) and 3001–2 (required attachments to claim), 3001–3 (calculation of interest on claims requiring the rate of interest, the per diem rate of interest, the principal amount, and the accrued interest), and 3007–1(disallowance of

overstated claims). The dicta in *Michnal* follows:

Although not specifically determinative in this matter, as the Trustee did not raise any objection to the calculation of the principal, interest and other charges, or lack thereof, the Court in reviewing not only this proof of claim, but claims in other cases, makes the following observation. The proof of claim does not set forth a per diem interest amount determined on the principal amount from the date when the payments on this obligation were last current and it does not note the date on which accruing interest on this obligation was last paid current. The nondisclosure of the per diem, and of the amount of accruing interest to the date of the petition date fails to comply with Mont. LBR 3001-2. Further, Homeside adds 19 delinquent monthly payments to the principal through the arrearage from the date of the last payment on April 1, 1999, to the Debtors's petition date of October 30, 2000. The addition of such delinquent monthly payments ($15,612.68) and other prepetition charges ($3,357.59) to the principal balance ($82,787.43), for a total of $101,757.70, is clearly an overstatement of its prepetition claim. In its amended claim, Homeside increases its unpaid principal balance from $81,644.14 to $82,787.43, without any explanation or itemization. "The amount of a creditor's 'claim' is typically determined as of the petition date, and includes the principal amount of the obligation plus all matured *pre* petition interest, fees, costs and charges owing as of the petition date." 4 L. KING, COLLIER ON BANKRUPTCY, ¶ 506.04[1] (15th ed. rev.). As the amortized monthly payment on the debt is allocated to principal and interest, the addition of the entire delinquent month-

ly payment to the unpaid principal overstates the accruing prepetition interest. *Michnal*, 19 Mont. B.R. at 411–12. This Court further concluded in *Michnal* the following:

Regardless if Homeside's claim is over- or undersecured, Homeside's request for fees and costs in the proofs of claim to be paid by the debtor or debtor's estate is subject to the requirement that it file an application for compensation under Mont. LBR 2016-1 which provides in part: "No compensation or reimbursement of expenses shall be paid a professional, including from a retainer, until allowed by order of the Court under this Rule." Rule 2016(a), F.R.B.P., explicitly requires a detailed application for compensation or reimbursement of expenses and states: "The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity." "All attorney's fees to be paid by debtors in bankruptcy cases must be approved by the Bankruptcy Court." *In re Allen,* 215 B.R. 503, 504 (Bankr.W.D.Tex.1997). Homeside has not filed an application for compensation or reimbursement of its bankruptcy fees and costs or foreclosure fees and costs, and such fees and costs are therefore not allowed under Rule 2016(a), and the Trustee's objection must be sustained.

Pursuant to MCA §§ 71-1-312 and 71-1-320, when a debtor cures a note obligation secured by a trust indenture through the provisions of 11 U.S.C. § 1322(b)(3) and (e), the creditor is only allowed to recover reasonable fees in an amount not to "exceed the lesser of $1,000 or 1 % of the amount due on the obligation, both principal and interest, at the time of default. In no event shall ...

attorneys' fees be charged to a grantor on account of any services rendered prior to the commencement of foreclosure." MCA § 71–1–320. Consequently, the reasonable fees, allowed by MCA § 71–1–320 when reinstatement occurs, as it does when a cure of the default is accomplished under MCA § 71–1–312 and 11 U.S.C. § 1322(b)(3) and (e), would be limited to the lesser of 1% or $1,000 of the amount of principal and interest due on the obligation. In the case *sub judice* and if the Court uses the principal and calculated interest identified on the Statement of Account through 9/25/06 of $32,223.59, the reasonable fee would be $322.24. This amount is significantly less than the fee claimed by the Estate of $10,574.00.

The Court further notes pursuant to MCA § 71–1–320 a creditor in a nonjudicial foreclosure may not charge the debtor attorneys' fees that exceed in the aggregate with the trustee's fee an amount in excess of 5 % of the amount due on the obligation at the time of the trustee's sale, including both principal and interest. In this case 5 % of the stated principal and interest amount of $32,223.59 amounts to $1,611.68. Even this amount of $1,611.68 that would be allowed if the nonjudicial foreclosure went to trustee's sale under Montana law without the stay of the bankruptcy filing is greatly less than the $10,574.00 claimed by the Estate for Johnson's fees. The 5 % limitation of the MCA § 71–1–320 is not applicable in this case as the trustee's sale as not occurred. The fees claimed by the Estate on behalf of Johnson are excessive given the statutory limitations of MCA § 71–1–320. The fees stated in the proof of claim filed by the Estate are egregiously overstated.

As discussed above, several errors exist in the filed proof of claim. No per diem is calculated. The date to which interest was paid current is not disclosed. The stated, unpaid interest of $3,607.86 is calculated to 9/25/06 and not to the date of the petition (7–28–06). No hourly breakdown of the fees exists so the Court can determine if the hourly rate and total hours are reasonable. The fees do not disclose if any of the services were rendered prior to the commencement of the foreclosure. No identification of the costs exists to assist the Court in determining if they are reasonable.

■ Although the current local rule, 2016–1, provides that pre- and postpetition fees for an oversecured creditor must be submitted by fee application, the Court does belief given its further review of the requirements of the rule and the discussion contained in *Atwood* that a creditor may be able to disclose all prepetition fees and costs in the proof of claim without the need to file a fee application. Further a creditor may be able to disclose all postpetition fees and costs in a proof of claim to the date of the filing the proof of claim. The creditor however must be careful to properly disclose the pre- and postpetition fees by including documentation and an itemization to establish the reasonableness of such fees and costs. A fee application for postpetition fees and costs may more adequately provide all necessary information so the Court can independently determine the reasonableness of the fees and costs. The Court, in the future, will consider an amendment to Mont. LBR 2016–1 to clarify the need for a fee application.

■ Aside from the above discussion concerning the use of a fee application, the Court does adopt the statutory limitations imposed by MCA § 71–1–320 for creditor's attorneys who are requesting fees in a proof of claim involving a foreclosure under the Small Tract Financing Act of Montana. The Court, however, disallows the stated fees of $10,574.00 in the secured claim and the stated fees of $6,576.00 in

the prepetition arrearage as no fee application was submitted and no hourly itemization exists in the proof of claim and the stated amounts egregiously exceed the fees allowed by statutory limitation.

 The Court now considers the remaining issue. The costs stated for the secured claim and the prepetition arrearages contain no description as to what the costs involve. Such costs are disallowed as the Court can not determine if such costs are reasonable.

Based upon the foregoing, the Court will enter the following by separate order,

IT IS HEREBY ORDERED Drummond's objection to the fees filed by Johnson on behalf of the Estate is sustained; that the fees stated in the secured claim portion of the Statement of Account attached to proof of claim no. 3 in the amount of $10,574.00 and the fees stated in the prepetition arrearages of the Statement of Account attached to proof of claim no. 3 in the amount of $6,576.00 and the costs stated by the Estate in the secured claim and the prepetition arrearages of the Statement of Account attached to its proof of claim no. 3 in the amount of $471.39 are disallowed; that the principal amount of $28,605.73 is allowed; that the unpaid interest to 9/25/06 in the amount of $3,617.86 is allowed; that the prepetition arrearages are calculated as follows: 23 months unpaid monthly installment payments X $287.63/month that amount to $6,615.49, plus late charges of $14.83/month × 23 months that amount to $341.09 for a total prepetition arrearage of $6,956.58 are allowed; and that Debtor shall have 10 days to filed an amended plan, if necessary, with notice to all creditors consistent with the foregoing memorandum.